**UNITED STATES of America,
Appellant,**

v.

**Stanley N. HOWELL, Warren S. Cochran,
Cochran & Howell, a partnership, Post
Cleaners, Thrifty Cleaners, Appellees.**

**No. 18292.**

United States Court of Appeals
Ninth Circuit.
May 27, 1963.

ORR, Circuit Judge.

Appellees Howell and Cochran, operating the firms of Cochran and Howell, Post Cleaners, and Thrifty Cleaners, obtained and held Concessionaire Agreements with the Bay Area Exchange, which the Government alleges to be an integral part of the Army and Air Force Exchange Service, an agency of the United States.

Under the said Concessionaire Agreements, appellees were granted the privilege of performing the cleaning, pressing, tailoring and laundering of wearing apparel at military installations of the United States and, in return for such privilege, agreed to pay to the Bay Area Exchange a specified percentage of their gross receipts from said operations.

It is alleged in the complaint that Howell·and Cochran knowingly and wilfully submitted false statements and records of their gross receipts to the Bay Area Exchange by substantially understating the amounts of their gross receipts; that they directed their employees to conceal the true amount of said gross receipts; and that they paid less commissions to the Exchange than were actually due, thereby causing a financial loss to the Exchange.

It is further alleged that Howell and Cochran, in the year 1949, entered into a conspiracy with one Elliott, general manager of said Exchange, and bribed him to use his office to secure preferential treatment and favorable terms in the Concessionaire Agreements for appellees' firms. Elliott also agreed to allow them to conceal the full amount of receipts received by them and to accept lesser sums than were actually due.

Joseph D. Guilfoyle, Asst. Atty. Gen., Cecil F. Poole, U. S. Atty., Alan S. Rosenthal and David L. Rose, Dept. of Justice, Washington, D. C., for appellant.

James T. Davis, San Francisco, Cal., for appellee Warren S. Cochran.

Valentine C. Hammack, San Francisco, Cal., for appellee Stanley N. Howell.

Before ORR, HAMLEY and BROWNING, Circuit Judges.

Howell, one of the appellees, has been convicted on four counts of a charge of submitting intentionally false statements to an agency of the United States in violation of 18 U.S.C. § 1001 and fined $2,500. The United States brought this civil action, alleging in four counts: First, that the submission of the false statements of gross receipts by appellees constituted a violation of the False

Claims Act, 31 U.S.C. § 231. The second count is brought under 28 U.S.C. § 1345 for money wrongfully withheld from the United States and seeks recovery of the unpaid commissions. The third count charges a conspiracy between the appellees and Elliott to defraud the United States and seeks double resulting damages and $2,000 from each appellee. The fourth count seeks to recover the alleged bribes paid to Elliott by the appellees.

The trial court dismissed all four counts on the ground that they failed to state a claim upon which relief could be granted. The United States is not impressed and asks this Court to reverse the judgment as to the first three counts. It does not here complain about the fourth count.

So we are first confronted with the question of whether the facts as alleged bring the action within the provisions of the False Claims Act, which provides:

> "Any person not in the military or naval forces of the United States, * * * who shall make or cause to be made, or present or cause to be presented, for payment or approval, to or by any person or officer in the civil, military, or naval service of the United States, any claim upon or against the Government of the United States, or any department or officer thereof, knowing such claim to be false, fictitious, or fraudulent, * * * or who enters into any agreement, combination, or conspiracy to defraud the Government of the United States, or any department or officer thereof * * * shall forfeit and pay to the United States the sum of $2,000, and, in addition, double the amount of damages which the United States may have sustained by reason of the doing or committing such act, together with the costs of suit; and such forfeiture and damages shall be sued for in the same suit."

A cause of action cannot operate within the area of the False Claims Act unless a false or fraudulent claim can be established. See United States v. Farina, 153 F.Supp. 819 (D.N.J.1957) and cases cited therein. The United States argues that by submitting the false statements of their monthly receipts, appellees were claiming the right under the Agreements to continue to hold the laundry and dry cleaning concessions on the military installations in the San Francisco Bay Area. A similar argument has been rejected by the Second Circuit in United States ex rel. Kessler v. Mercur Corp., 83 F.2d 178 (2d Cir., 1936), wherein the Government alleged that the defendant had submitted false reports as to its net profits under a percentage lease with the Government.

■■ A claim within the meaning of the False Claims Act is a demand upon the Government for the payment of money or transfer of property. United States v. Borth, 266 F.2d 521 (10th Cir., 1959); United States v. Cochran, 235 F.2d 131 (5th Cir., 1956); United States v. Tieger, 234 F.2d 589 (3rd Cir., 1956); United States v. Schmidt, 204 F.Supp. 540 (E.D.Wis.1962).[1] The allegations made in the complaint do not constitute a demand upon the Government for the payment of money or delivery of property.

■ We adopt the definition of a claim within the meaning of the False Claims Act as stated in United States v. Cohn, 270 U.S. 339, 46 S.Ct. 251, 70 L.Ed. 616 (1926):

> "While the word 'claim' may sometimes be used in the broad juridical sense of 'a demand of some matter as of right made by one person upon another, to do or to forbear to do some act or thing as a matter of duty,' Prigg v. Pennsylvania, 16 Pet. 539, 615 [10 L.Ed. 1060], it is clear, in the light of the entire context, that in the present statute, the provision relating to the payment

---

1. But see United States ex rel. Rodriquez v. Weekly Publications, 68 F.Supp. 767 (S.D.N.Y.1946). See, generally, Note, 69 Harv.L.Rev. 1106 (1956).

or approval of a 'claim upon or against' the Government relates solely to the payment or approval of a claim for money or property to which a right is asserted against the Government, based upon the Government's own liability to the claimant." 270 U.S. at 345–346, 46 S.Ct. at 252–253, 70 L.Ed. 616.

The United States contends that this language [2] in Cohn was disavowed by the Supreme Court in United States ex rel. Marcus v. Hess, 317 U.S. 537, 63 S.Ct. 379, 87 L.Ed. 443 (1943). We do not so read that case. In Marcus the defendants worked on PWA projects and were charged with defrauding the United States by collusive bidding. Although the contracts were not made between the federal government and the defendants, a portion of the money paid to them was federal in origin and part of their compensation came from the United States. The Supreme Court of the United States held that the claim need not be made directly against the Government provided that, ultimately, the claim would be paid by the Government. Although the claim in Marcus was made indirectly against the Government, it still was a claim within the definition of Cohn. See United States v. Brown, 274 F.2d 107 (4th Cir., 1960); United States v. Veneziale, 268 F.2d 504 (3rd Cir., 1959). Not only did the Supreme Court distinguish Cohn on its facts, but it also stated that: "The initial fraudulent action and every step thereafter taken pressed ever to the ultimate goal— payment of government money to persons who had caused it to be defrauded" 317 U.S. at 543–544, 63 S.Ct. at 383–384, 87 L.Ed. 443.

In the latest Supreme Court opinion to interpret the False Claims Act, United States v. McNinch, 356 U.S. 595, 78 S.Ct. 950, 2 L.Ed.2d 1001 (1958), the Court found the above quoted language from Cohn still relevant in determining what is a claim within the meaning of the Act. 356 U.S. at 600, n. 10, 78 S.Ct. at 953, 2 L.Ed.2d 1001. The Court also relied on the Third Circuit's definition of a claim as being "a demand for money or for some transfer of public property." 356 U.S. at 599, 78 S.Ct. at 952, 2 L.Ed. 2d 1001.[3]

█ In an attempt to sustain their interpretation of a claim within the meaning of the False Claims Act, the United States directs our attention to the broad statements made during the Senate debates at the time the Act was being considered to the effect that it was intended to provide protection against those who attempt to cheat the Government. If the Act were intended to cover any and all attempts to cheat the United States, we doubt that the Congress would have used the word "claim" to specify such an intent. The Supreme Court of the United States has made it clear that the "False Claims Act was not designed to reach every kind of fraud practiced on the Government." United States v. McNinch, supra, 356 U.S. at 599, 78 S.Ct. at 953, 2 L.Ed.2d 1001. See also United States v. Cochran, supra, 235 F.2d at 133–134.

█ The United States argues that the difference between a situation where the claimant is fraudulently demanding money and one where he is fraudulently seeking a reduction in the amount of money to be paid by him is not one which warrants a different result under the

---

**2.** The Government also argues that this is dictum, but see United States v. Tieger, supra, 234 F.2d at 592: "To an inferior federal court, such a plain statement of a statute's meaning, adopted by the Supreme Court as the basis of its decision is much more than 'dictum', however apparent it may seem to analysts that the court could have gone on a narrower ground, had it chosen to do so."

**3.** This interpretation would seem to be consistent with the original purpose of the False Claims Act, which was passed in 1863 in order to prevent frauds in the sales of provisions and equipment to the War Department during the Civil War. United States v. McNinch, supra, 356 U.S. at 599, 78 S.Ct. at 592–593, 2 L.Ed. 2d 1001.

False Claims Act. The effect of both types of conduct is the same in that the Government is defrauded of money to which it is entitled. This reasoning would be valid if we were dealing with a general fraud statute. But the manner in which the fraud occurs is controlling in bringing the False Claims Act into play. To do that, there must be more than mere fraud; the fraud must be predicated on a claim. The fraudulent reduction of appellees' liability to the Government does not spell out a false claim as defined by the statute.[4]

In support of their contention, the United States relies upon Smith v. United States, 287 F.2d 299 (5th Cir., 1961). We do not think that case differs in substance from the view we take and we are certainly in accord with the conclusion reached therein. "The false claim resulted, as Smith knew it would, in the actual payment of Federal funds. That is sufficient." 287 F.2d at 304.

The United States alleges that the conspiracy charged in this case resulted in a loss of thousands of dollars to the United States and in the event it be held that the United States has no civil remedy under the False Claims Act, appellees will get the advantage of realizing much of the ill gotten money arising from their fraud and conspiracy. Even so, this does not justify putting an interpretation on the word "claim" as used in the statute which is clearly untenable. Moreover, this is not the Government's only remedy. In addition to criminal sanctions (Howell has already been fined $2,500), the United States also has a cause of action on common law grounds.

Finding no claim within the meaning of the False Claims Act, we affirm the judgment of dismissal of the first and third alleged causes of action; but we take a different view as to the alleged second cause of action. The trial court decided that the second count should be dismissed on the theory that the complaint did not state a cause of action for money had and received.

█ However, under the liberal rules of federal practice, a motion to dismiss for failure to state a cause of action should not be granted unless it appears certain that the plaintiff would be entitled to no relief under any state of facts which could be proved in support of his claim. Sidebotham v. Robison, 216 F.2d 816 (9th Cir., 1954). A "complaint is not to be dismissed because the plaintiff's lawyer has misconceived the proper legal theory of the claim, but is sufficient if it shows that the plaintiff is entitled to *any* relief which the court can grant, regardless of whether it asks for the proper relief." Dotschay v. National Mutual Insurance Co., 246 F.2d 221, 223 (5th Cir., 1957). See also Nord v. McIlroy, 296 F.2d 12, 14 (9th Cir., 1961).

█ In the instant case it seems clear to us that the second alleged cause of action states a claim for relief under common law contract principles. It alleges the existence of contracts (the Concessionaire Agreements) from which the Bay Area Exchange had received lesser sums than were due because of the appellees' fraud.

█ While not disputing the fact that the plaintiff has a cause of action under a contract theory, appellees contend that the United States is not the proper party to bring this action. The contention is based upon the fact that the contracts were made between the appellees and the Bay Area Exchange, not the United States.

We do not agree. The Bay Area Exchange, as all post exchanges, is operated by the Army and Air Force Exchange Service, subject to the direction and regulations of the Secretary of the Army and Secretary of the Air Force. 32 C.F.R. § 554.5. The Army and Air Force Exchange Service "is an instrumentality

4. Compare Evans v. United States, 11 F.2d 37 (4th Cir., 1926) (fraudulent claim for a tax refund) with Olson v. Mellon, 4 F. Supp. 947 (W.D.Pa.1933), aff'd per curiam sub nom. United States ex rel. Knight v. Mellon, 71 F.2d 1021 (3rd Cir., 1934) (fraudulent tax return).

of the United States entitled to the immunities and privileges available to the departments and agencies of the Federal Government under the Federal Constitution and statutes and under international treaties, conventions, and administrative agreements." 32 C.F.R. § 554.6.

After reviewing the history and functions of post exchanges, the Supreme Court in Standard Oil Co. of Cal. v. Johnson, 316 U.S. 481, 62 S.Ct. 1168, 86 L.Ed. 1611 (1942) concluded that "post exchanges as now operated are arms of the Government deemed by it essential for the performance of governmental functions. They are integral parts of the War Department, share in fulfilling the duties entrusted to it, and partake of whatever immunities it may have under the Constitution and federal statutes." 316 U.S. at 485, 62 S.Ct. at 1170, 86 L.Ed. 1611.

Although Congress in 1952 provided that civilian employees of post exchanges and other nonappropriated fund activities are not to be considered employees of the United States for purposes of the Federal Employees' Compensation Act and statutes administered by the Civil Service Commission, it specifically included the provision that "the status of these nonappropriated fund activities as Federal instrumentalities shall not be affected." 5 U.S.C. § 150k.

The federal courts have consistently held that post exchanges and other nonappropriated fund activities of the military services are instrumentalities of the United States and integral parts of the Government's military services. United States v. Forfari, 268 F.2d 29 (9th Cir., 1959); Rizzuto v. United States, 298 F.2d 748 (10th Cir., 1961); United States v. Holcombe, 277 F.2d 143 (4th Cir., 1960); Aubrey v. United States, 103 U.S.App.D.C. 65, 254 F.2d 768 (1958); Grant v. United States, 162 F.Supp. 689 (E.D.N.Y.1958).

We recognize that the above cited cases involved either the Tort Claims Act or governmental immunity; but we are of the opinion that since post exchanges are considered federal agencies for purposes of the Tort Claims Act and enjoy the protection of governmental immunity, they are also such an integral part of the Government that the United States can sue to protect their interests. Cf. Harlow v. United States, 310 F.2d 361, 370–371 (5th Cir., 1962).

The judgment as to the first and third counts of the complaint is affirmed. The dismissal of the second count is reversed and the case is remanded for proceedings consistent with this opinion.