**UNITED STATES of America,
Plaintiff,**

v.

**NEIFERT–WHITE CO., a corporation,
Defendant.**

**No. 1229.**

United States District Court
D. Montana,
Helena Division.

Dec. 3, 1965.

Patrick F. Hooks, Townsend, Mont., and Hughes & Bennett, Helena, Mont., for defendant.

Moody Brickett, U. S. Atty., for plaintiff.

MURRAY, Chief Judge.

This is a civil action brought by the government under the provisions of the False Claims Act, 31 U.S.C. § 231 et seq. to recover the penalties provided by that Act. Jurisdiction of the action is expressly conferred on this court by 31 U.S.C. § 232(A).

Section 231 of Title 31 provides in pertinent part as follows:

"Any person not in the military or naval forces of the United States * * * who shall make or cause to be made, or present or cause to be presented, for payment or approval, to or by any person or officer in the civil, military, or naval service of the United States, any claim upon or against the Government of the United States, or any department or officer thereof, knowing such claim to be false, fictitious, or fraudulent, or who, for the purpose of obtaining or aiding to obtain the payment or approval of such claim, makes, uses, or causes to be made or used, any false bill, receipt, voucher, roll, account, claim, certificate, affidavit, or deposition, knowing the same to contain any fraudulent or fictitious statement or entry * * * shall forfeit and pay to the United States the sum of $2,000, and, in addition, double the amount of damages which the United States may have sustained by reason of the doing or committing such act, together with the costs of suit, and such forfeiture and damages shall be sued for in the same suit."

The complaint alleges that at all times pertinent to the action there existed, pursuant to Section 4(h) of the Commodity Credit Corporation Charter Act, 15 U.S.C. § 714b(h), the government's Farm Storage Facility Loan Program under which qualified borrowers were eligible to obtain from the government to finance the purchase of grain storage bins, loans of not to exceed 80% of the actual purchase price paid by the borrower for said bins. The complaint contains 12 causes of action in each of which it is

charged with respect to a different borrower under the program that the defendant, a dealer in grain storage bins, assisted the respective borrowers to obtain loans in excess of 80% of the purchase price actually paid for the grain storage bins purchased by furnishing false invoices which showed the purchase price of the respective bins purchased to be greater than the purchase price actually paid. As an example, in the First Cause of Action, it is alleged that the actual price for which the bins were sold to a named borrower was $650 each, on which, under the program, the borrower would have been entitled to a loan of only $520 each, but that defendant furnished an invoice showing the price paid for the bins was $725 each, and thereby the borrower obtained loans of $580 on each bin. The remaining causes of action contain similar allegations with respect to different borrowers. The government concedes that there was no default on any of the loans and that it suffered no damage, and seeks only the penalty provided by the Act on each count.

Defendant filed an answer in which the First Defense to each cause of action was that the complaint failed to state a claim upon which relief can be granted, and thereafter moved for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure. At the time of pretrial conference the motion for judgment on the pleadings was heard and briefs in support of and in opposition to the motion were submitted, and the motion was taken under advisement.

Preliminarily it should be noted that the motion is timely since it was made after the pleadings were closed and within such time as not to delay the trial of the action, as required by Rule 12(c).

Defendant's position on the motion is that the loan application by the various borrowers, which were supported by the allegedly false invoices furnished by defendant, are not false claims against the government within the meaning of the False Claims Statute, 31 U.S.C. § 231. After considering the briefs of the parties and the authorities cited therein, the court is of the opinion that the defendant's position is correct.

■ At the outset it should be pointed out that the False Claims Act was not designed to reach every fraud practiced upon the government. As the Court of Appeals for the Ninth Circuit stated in United States v. Howell, 318 F.2d 162, at page 165 (1963):

"If the (False Claims) Act were intended to cover any and all attempts to cheat the United States, we doubt that the Congress would have used the word 'claim' to specify such an intent. The Supreme Court of the United States has made it clear that the 'False Claims Act was not designed to reach every kind of fraud practiced on the Government.' United States v. McNinch, supra, 356 U.S. 595, at 599, 78 S.Ct. 950, at 953, 2 L.Ed. 1001. See also United States v. Cochran, supra, 5 Cir., 235 F.2d at 133–134."

In United States v. Cohn, 270 U.S. 339, at 345, 46 S.Ct. 251, at 252, 70 L.Ed. 616 (1926) the Supreme Court defined what is a claim within the meaning of the False Claims Act in the following words:

"While the word 'claim' may sometimes be used in the broad juridicial sense of 'a demand of some matter as of right, made by one person upon another, to do or to forbear to do some act or thing as a matter of duty,' Prigg v. Commonwealth of Pennsylvania, 16 Pet. 539, 615 (10 L.Ed. 1060), it is clear, in the light of the entire context, that in the present statute, the provision relating to the payment or approval of a 'claim upon or against' the Government relates solely to the payment or approval of a claim for money or property *to which a right is asserted against the Government, based upon the Government's own liability to the claimant*." (Emphasis supplied.)

In United States v. McNinch, 356 U.S. 595, 78 S.Ct. 950, 2 L.Ed.2d 1001 (1958) the Supreme Court found the above quot-

ed 1926 definition still relevant in determining what is a claim within the meaning of the False Claims Act. This definition has also been adopted and applied in the Ninth Circuit in United States v. Howell, supra, and in the Third Circuit in United States v. Tieger, 234 F.2d 589 (1956).

Applying the above definition of a "claim" to the facts alleged in the complaint in the instant case, it immediately becomes apparent that the loan applications presented to the government by the borrowers, supported by the false invoices furnished by defendant were not "claims for money or property to which a *right* was asserted against the Government based on the Government's own liability" to the borrowers, because the Government was under no liability to those borrowers. The loan applications herein involved were not claims against the government for money to which the borrowers were asserting a right based on some liability of the government to the borrowers; rather they were requests for the loan of money.

In 54 C.J.S. Loan p. 654, it is stated

"*A loan of money has been defined as a contract* by which one delivers a sum of money to another and the latter agrees to return at a future time a sum equivalent to that which he borrows  *  *  *  A loan of money is something more than the mere delivery of money by the owner to another. In order to *constitute a loan there must be a contract* whereby, in substance, one party transfers to the other a sum of money which the other agrees to repay absolutely, together with such additional sums as may be agreed on for its use."

Viewing a loan as a contract, an application for a loan is an invitation to enter a contract. In United States v. Tieger, 234 F.2d 589 (1956) the Court of Appeals for the Third Circuit noted at 591,

"But this privilege of contracting certainly is not a claim in normal business or legal usage and terminology."

And in footnote 7 in the Tieger case on 591, the court observed

"The 'claim' must be presented for 'payment or approval.' This describes the usual procedure in making a demand for money or property but is not an apt characterization of what is done in calling upon another to enter into a contract."

The decisions in United States v. Tieger, supra, which incidentally was approved by the Supreme Court in United States v. McNinch, supra, and United States v. Veneziale, 268 F. 504 (1959), both decided in the Third Circuit, are illustrative of the proposition that in order for there to be a claim within the meaning of the False Claims Act, the claim must be founded as of right upon the government's own liability to the claimant. Both cases involved false statements made to the Government by the defendants, through private lending institutions, for the purpose of obtaining home improvement loans which were subsequently insured by the Government under Title I of the Federal Housing Act. In the Tieger case, the loans were subsequently repaid by the borrowers and no claim against the Government under its loan insurance ever resulted. The Third Circuit held that no offense under the False Claims Act was established, even though the false statements resulted in the Government issuing insurance on the loans, because no claim was made against the Government based on its own liability. On the other hand, in the Veneziale case, the borrowers defaulted on the loans, and the lending institutions made a claim against the Government for repayment of the loans based on the loan insurance which it had issued as a result of the false statements presented to it. In this case the court found an offense under the False Claims Act because the Government found itself faced with an enforceable demand for money based up-

on its liability under the loan insurance which it had been fraudulently induced to issue.

In this case, the loan applications, even though supported by false invoices, did not constitute an enforceable demand for money on the Government based on any liability of the Government to the borrowers.

In opposition to the motion the Government relies on the cases of Rainwater v. United States, 356 U. S. 590, 78 S.Ct. 946, 2 L.Ed.2d 996, and the cases of Toepleman v. United States, United States v. Cato Bros., United States v. McNinch, decided in a joint opinion at 242 F.2d 359 and 356 U.S. 595, 78 S.Ct. 950, 2 L.Ed.2d 1001. In the Rainwater case the only question presented and decided was whether a claim against Commodity Credit Corporation was a claim against the United States within the meaning of the False Claims Act. The Supreme Court decided that it was. No question was raised or decided in that case as to what constitutes a claim within the meaning of the Act. The same is also true of the Cato and Toepleman cases. With reference to those cases the Supreme Court said at 356 U. S. 596, 78 S.Ct. 951, 2 L.Ed.2d 1001, "The Court of Appeals reversed on the ground that a false claim against Commodity was not a claim 'against the Government of the United States, or any department or officer thereof' within the meaning of that Act. The sole question before us, so far as these two actions are concerned, is whether the Court of Appeals erred in so deciding. For the reasons set forth in Rainwater we hold that it did." Therefore, it is obvious that the Rainwater, Cato and Toepleman cases are no authority for the Government's position here.

The McNinch case is directly against the Government's position, and supports the views hereinbefore expressed. In that case at 356 U.S. 599, 78 S.Ct. 952, the Supreme Court said:

"At the same time it is equally clear that the False Claims Act was not designed to reach every kind of fraud practiced on the Government. From the language of that Act, read as a whole in the light of normal usage, and the available legislative history we are led to the conclusion that an application for credit insurance does not fairly come within the scope that Congress intended the Act to have."

The Government also relies on United States v. Cherokee Implement Company, D.C., 216 F.Supp. 374. In that case the court stated:

"In all these cases where money was actually paid out in response to a false application for a loan, it was a claim within 31 U.S.C.A. § 231."

The cases referred to are McNinch, Rainwater and Veneziale, supra and Smith v. United States, 5 Cir., 287 F.2d 299; United States v. Brown, 4 Cir., 274 F.2d 107 and United States v. Globe Remodeling Co., Inc., D.C., 196 F.Supp. 652. None of the cases involved moneys paid out as a result of an application for a loan except Rainwater, and as pointed out above the question of whether an application for a loan is a claim was neither raised or decided. McNinch involved, as above indicated, an application for credit insurance and it was there decided that a false application for credit insurance was not a false claim within the meaning of the Act. Veneziale, as pointed out above, involved a claim under the government's liability on credit insurance it had been fraudulently induced to issue. Smith v. United States involved the submission of false quarterly reports from which rentals to be paid under a lease from the Federal Government were to be determined. United States v. Brown involved false claims for support prices on tobacco. United States v. Globe Remodeling Co., like Veneziale, involved a false claim against the Government on its liability on credit insurance it had fraudulently been induced to issue under the Federal Housing Act. For these reasons the court does not find the Cherokee Implement Co. case convincing.

Therefore, it is ordered and this does order that the defendant's motion for

judgment on the pleadings be and the same is hereby granted, and each cause of action, and the complaint and the action is hereby ordered dismissed on the ground that neither the complaint nor any of its causes of action states a claim for relief under the provisions of 31 U.S.C., Section 231.