UNITED STATES of America,
Appellant,

v.

NEIFERT–WHITE COMPANY, a corporation, Appellee.

No. 20945.

United States Court of Appeals
Ninth Circuit.

Jan. 20, 1967.

John W. Douglas, Asst. Atty. Gen., Alan S. Rosenthal, Atty., Lawrence R. Schneider, Atty., Civil Div., Dept. of Justice, Washington, D.C., Moody Brickett, U. S. Atty., Butte, Mont., for appellant.

Patrick F. Hooks, Townsend, Mont., Michael J. Hughes, George T. Bennett, Helena, Mont., for appellee.

Before CHAMBERS, HAMLEY and DUNIWAY, Circuit Judges.

HAMLEY, Circuit Judge:

The United States brought this action against Neifert-White Company, based upon the civil provisions of the False Claims Act (Act), R.S. §§ 3490 and 5438 (1875), 31 U.S.C. § 231 (1964).[1] Defendant answered and moved for judgment on the pleadings. The district court granted the motion and entered a judgment dismissing the action. United States v. Neifert-White Company, D.C. Mont., 247 F.Supp. 878. The Government appeals.

The facts of this case are not in dispute. Neifert-White is in the business of selling grain storage bins to farmers in Montana. Under the government Farm Storage Facility Loan Program, any grain grower purchasing grain storage bins could make application to borrow from the Commodity Credit Corporation (C.C.C.) an amount not to exceed eighty percent of the actual purchase price of these bins.[2]

Each applicant was required to submit a loan application to the local Agricultural Stabilization and Conservation Committee, accompanied by an invoice for the actual cost of the grain storage bins. During 1959 Neifert-White sold grain storage bins to twelve growers and

---

1. The statute, as set forth in 31 U.S.C. § 231, reads in part as follows:

    "Any person * * * who shall make or cause to be made, or present or cause to be presented, for payment or approval, * * * any claim upon or against the Government of the United States, or any department or officer thereof, knowing such claim to be false, fictitious, or fraudulent, * * * shall forfeit and pay to the United States the sum of $2,000, and, in addition, double the amount of damages which the United States may have sustained by reason of the doing or committing such act, together with the costs of suit; and such forfeiture and damages shall be sued for in the same suit."

    In bringing this action under the False Claims Act, based upon the transactions described above, the Government did not assert that it had sustained any damages. Accordingly, the Government sought recovery only of the $2,000 statutory penalty for each of twelve alleged violations, as authorized by section 231, aggregating $24,000.

2. This program existed pursuant to the provisions of Section 4(h) of the Commodity Credit Corporation Charter Act, 62 Stat. 1070 (1948), as amended, 15 U.S.C. § 714b(h) (1964), and is administered pursuant to that agency's Farm Storage Facilities regulations, 7 CFR § 1474.721–769.

assisted each of them in obtaining a loan from the C.C.C. An officer of Neifert-White prepared false invoices which overstated the sales price of the storage bins sold, enabling the purchasers to qualify for larger loans. Relying upon these false invoices, the C.C.C. approved loans to the twelve applicants in excess of eighty percent of the bins' actual purchase price.

The district court granted Neifert-White's motion for judgment on the pleadings on the ground that the loan applications to the C.C.C. were not "claims" within the meaning of the Act. The court reasoned that the loan applications " * * * were not claims against the government for money to which the borrowers were asserting a right based on some liability of the government to the borrowers; rather they were requests for the loan of money." 247 F. Supp. at 881. Such applications, the court held, were no more than unenforceable invitations to enter into loan contracts.

The Government concedes that there was no legal obligation on the part of the United States to approve the grain growers' applications for such loans. It argues, in effect, however, that where an application to the Government is for the purpose of obtaining the disbursement or transfer of federal funds or property, it constitutes a "claim" within the meaning of the Act, even though the applicant does not assert an enforceable legal right to such disbursement or transfer. There is no question that these applications were for the disbursement of federal money.

■ The meaning which the Government would give to the statutory term "claim," is contrary to that expressed in United States v. Cohn, 270 U.S. 339, 46 S.Ct. 251, 70 L.Ed. 616, involving a criminal prosecution for a violation of the Act. The Supreme Court there made it clear that a "claim" under that Act involves two elements, both of which must be present, namely: (1) an effort to obtain a disbursement or transfer of federal funds or property, (2) to which funds or property a right is asserted against the Government, based upon the Government's own liability to the claimant.[3] The second of these two elements is lacking in our case.

The Government argues that the pronouncement in *Cohn*, that a claim against the Government relates to money or property to which a right is asserted against the Government is dictum and should be disregarded. In support of this view, the Government contends that, in *Cohn*, the Supreme Court held for the defendant on the ground that since the property the defendant sought to obtain was duty-free merchandise in the possession of the collector of customs, there had been no effort to obtain any funds or property belonging to the Government. Therefore, the Government argues, the Supreme Court's statement in *Cohn*, concerning the necessity of an assertion of right against the Government, "was entirely gratuitous."

■ It is questionable whether a lower federal court may, with propriety, disregard a clear pronouncement in a decision of the Supreme Court of the United States, even though, analytically, it may constitute dictum.[4] However, pass-

---

3. The Court there stated:
   "While the word 'claim' may sometimes be used in the broad juridical sense of 'a demand of some matter as of right, made by one person upon another, to do or to forbear to do some act or thing as a matter of duty,' Prigg v. [Com. of] Pennsylvania, 16 Pet. 539, 615 [10 L.Ed. 1060], it is clear, in the light of the entire context, that in the present statute, the provision relating

to the payment or approval of a 'claim upon or against' the Government relates solely to the payment or approval of a claim for money or property to which a right is asserted against the Government, based upon the Government's own liability to the claimant." (270 U.S. at 345–346, 46 S.Ct. at 252.)

4. In United States v. Howell, 9 Cir., 318 F.2d 162, 165, note 2, this court, dealing with a similar contention concerning this

ing this, we think that this statement in the *Cohn* opinion is not dictum, but is part of the rationale of that decision. In effect the Supreme Court said that there was no "claim" under the Act for either of two reasons, namely: (1) no right was asserted against the Government based upon the Government's own liability, and (2) the property which was sought and obtained was not that of the United States. Where an appellate court decision rests on two or more grounds, none can be relegated to the category of *obiter dictum*. Woods v. Interstate Realty Co., 337 U.S. 535, 537, 69 S.Ct. 1235, 93 L.Ed. 1524.

The Government further argues, however, that the Supreme Court's subsequent decision in United States ex rel. Marcus v. Hess, 317 U.S. 537, 63 S.Ct. 379, 87 L.Ed. 443, precludes reliance on the *Cohn* statement that, to be a "claim" under the Act, the effort to obtain federal funds or property must be founded on an asserted right against the Government. The Government made precisely the same contention in United States v. Howell, 9 Cir., 318 F.2d 162, 165. We rejected the contention in that case for reasons which we still find persuasive.

Moreover, in its later decision in United States v. McNinch, 356 U.S. 595, 600, n. 10, 78 S.Ct. 950, 2 L.Ed.2d 1001, the Supreme Court indicated its continued acceptance of the *Cohn* construction of the Act, quoting the same language from *Cohn* that we have set out in note 3, above. In *McNinch*, the Supreme Court discussed the question of whether the transaction there in issue involved an assertion of right against the Government. *McNinch* at pages 598–599, 78 S. Ct. 950. However, the Court did not resolve that question. Instead the Court held that no claim was involved because no immediate disbursement of federal funds was sought. Nevertheless, the repetition of the *Cohn* definition at the

end of the *McNinch* opinion, as a statement having "relevancy" in determining what constitutes a claim under the Act, demonstrates that this definition was not impaired by *Hess*, and is still recognized as a correct interpretation of the statute.

In holding that the *Cohn* definition of a "claim" under the Act has not been disavowed in later Supreme Court decisions, we are reaffirming a similar determination made in United States v. Howell, 9 Cir., 318 F.2d 162, 164–165. In there construing the statute as limited to efforts to obtain federal funds or property on the basis of an assertion of right, we observed:

"If the Act were intended to cover any and all attempts to cheat the United States, we doubt that the Congress would have used the word 'claim' to specify such an intent." (318 F.2d at 165)

It is true, as the Government contends, that it was not necessary to our decision in *Howell*, to hold that the *Cohn* definition includes, as one element, an assertion of right against the Government. Nevertheless, we find persuasive the reasons there stated for the view that the entire *Cohn* definition continues to represent the view of the Supreme Court.

Arguing, in effect, that our interpretation of *Cohn*, *Hess* and *McNinch*, as expressed in *Howell*, and in this opinion, must be erroneous, the Government cites the decisions of several courts of appeals which, it believes, show that the "assertion of right" element of the *Cohn* definition is generally disregarded. In each of these cases the Government prevailed and the court of appeals decision contains no language expressly accepting the "assertion of right" element of the *Cohn* definition of "claim."

In five of the cases so cited, the "assertion of right" element was not dis-

pronouncement in *Cohn*, quoted with approval United States v. Tieger, 3 Cir., 234 F.2d 589, 592, where it was said that:
"'* * * [t]o an inferior federal court, such a plain statement of a statute's meaning, adopted by the Supreme

Court as the basis of its decision is much more than "dictum," ' however apparent it may seem to analysts that the court could have gone on a narrower ground, had it chosen to do so.' "

cussed on appeal, but the transaction under consideration apparently did involve an assertion of right against the Government. Thus, in United States v. Lagerbusch, 3 Cir., 361 F.2d 449, federal funds were caused to be disbursed under an assertion of right arising under a cost-plus contract between Hercules Powder Company and the Government. The only contention made on appeal, however, and rejected, was that since the defendant did not deal directly with the Government, but with its cost-plus contractor, the Act did not apply.

In United States v. Brown, 4 Cir., 274 F.2d 107, federal funds were caused to be disbursed under an assertion of right in connection with a price support program administered by the C.C.C., and pursuant to a contract between it and a local cooperative. However, the only contention made on appeal, and rejected, was that defendant's fraudulent application to the local cooperative should not be regarded as an effort to obtain federal funds through the C.C.C.

Likewise, in United States v. Alperstein, S.D.Fla., 183 F.Supp. 548, aff., 5 Cir., 291 F.2d 455, a veteran's application for hospital service from a Veteran's Administration hospital involved an assertion of right because the Administration was required by statute to provide hospital service to an eligible veteran. On appeal the only contention made was that the rendition of hospital services did not constitute a claim for "money or property" within the meaning of the Act. That contention was rejected in affirming judgment against the defendant.

In Smith v. United States, 5 Cir., 287 F.2d 299, there was an assertion of right to federal reimbursement and credits under a lease between the Government and a housing authority. The defendant director of the housing authority contended that the Act was inapplicable because it was not he, but the housing authority that received the benefit of his fraud in reporting excessive expenses. The court rejected this contention, holding that the Act applies even where there is no direct liability running from the Government to the claimant.[5]

In United States v. De Witt, 5 Cir., 265 F.2d 393, a real estate dealer fraudulently caused a lending institution to make assertions of right against the Government based upon a mandatory statute, which required the Government to pay a certain percentage of a qualified veteran's purchase-money home loan. Under the terms of the then existing statute (38 U.S.C. § 694(c) [Supp. IV, 1957], the Government was obligated to pay the sum if it had approved the loan. The court of appeals held the Government was entitled to summary judgment on remand of the case.

In each of the five cases reviewed above, an effort was made to obtain something from the federal Government on the basis of an assertion of right, but the defendant argued, on appeal, that he was not liable because he did not have direct dealings with an agency of the Government, or that what was sought was not "money or property" within the meaning of the Act, or that he did not personally benefit from the fraud. Rejection of these arguments, none of which brought directly into question the "assertion of right" element of the *Cohn* definition of a "claim," does not represent a disavowal of that element as a necessary ingredient of a civil cause of action under the Act.

In three other courts of appeals decisions cited by the Government, in which the Government was permitted to recover, it is doubtful that the disbursement of federal funds was made pursuant to

5. In reaching this result the court stated that it was sufficient that the false claim resulted "in the actual payment of Federal funds." 287 F.2d at 304. The Government relies on this language to demonstrate that the sole requirement for a claim under the Act is an "actual payment of Federal funds." Taken in context, however, this statement was apparently intended to explain that the Act could apply even though there was no direct disbursement of funds from the Government to the defendant.

an assertion of right. One of these cases is United States v. Rainwater, 8 Cir., 244 F.2d 27, aff. 356 U.S. 590, 78 S.Ct. 946, 2 L.Ed.2d 996. In *Rainwater*, the Act was applied to false applications submitted to the C.C.C. for the purpose of obtaining a loan on cotton. In the Eighth Circuit opinion in that case, the court dealt with the question of whether the complaint stated facts upon which relief could be granted where, as contended by the defendant, there was no specific allegation of damages. The Eighth Circuit held that the complaint was sufficient in this respect.

Neither the Supreme Court nor the Eighth Circuit Court of Appeals dealt with the question of whether the application for such a loan could be regarded as a "claim" under the Act, in the absence of any showing that the United States was legally obligated to make the loans.[6] It is true that the defendants were found liable, and this could not have happened unless the False Claims Act was assumed to be applicable in all respects. To this extent, *Rainwater* tends to support the Government's position. However, in the absence of any discussion or resolution in the decisions of the question which concerns us, we do not regard them as having significant precedent value on the point.

These observations concerning *Rainwater* are equally applicable to Toepleman v. United States, 4 Cir., 263 F.2d 697, also cited by the Government.[7]

The Government also relies on Sell v. United States, 10 Cir., 336 F.2d 467, 473–475. The defendant in this case submitted a false application for assistance under the emergency feed program administered by the C.C.C. The application was granted and, pursuant to the agency regulations, fully negotiable purchase orders were issued. Criminal proceedings were brought against the defendant under Section 15(a) of the Commodity Credit Corporation Charter Act, 62 Stat. 1074 (1948), as amended, 15 U.S.C. § 714m(a) (1964), and civil proceedings under the False Claims Act. Defendant was convicted on the criminal charge and judgment was entered for the Government in the civil suit.

The only question apparently raised on appeal in the civil proceedings was whether the negotiable purchase orders issued by the C.C.C. to the defendant constituted property of the United States within the meaning of the False Claims Act. The court held that they did, and affirmed the judgment. The precise question of whether defendant's application constituted an assertion of right predicated on the Goverment's own liability, was not discussed. Nevertheless, since the judgment was affirmed, the decision tends to justify the Government's reliance on *Sell* to support its position.

The *Sell* decision, however, has even less precedent value than *Rainwater* or *Toepleman*, discussed above. We think the court in *Sell* erroneously equated the issues in the civil suit under the False Claims Act with those of the jointly tried criminal suit.[8] The criminal statute, unlike the False Claims Act, does not require that a "claim" be made against the United States, but requires only the making of a false "statement" for the purpose of influencing the action of the C.C.C., or for the purpose of obtaining money, property, or anything of value.

6. The only question presented to the Supreme Court was whether a claim against the C.C.C. was a claim against the United States. The Supreme Court held that it was.

7. The *Toepleman* case had previously been before the Supreme Court on the precise issue as presented in *Rainwater* and was similarly decided in the *McNinch* opinion, rendered the same day as *Rainwater*. 356 U.S. at 596, 78 S.Ct. at 951.

8. The court said:
    "The elements necessary to establish liability under the False Claims Act are set forth in the statute and the existence of all of those elements was at issue and established in the criminal action, with the exception of the requirement of the False Claims Act that the claimant be a person 'not in the military or naval forces of the United States * * * *'" (336 F.2d at 475)

 Had the False Claims Act contained language similar to that of the criminal statute instead of being restricted to "claims" against the United States, there is no doubt that the transactions here in question would have been covered. However, as the Supreme Court said in United States v. McNinch, 356 U.S. 595, 599, 78 S.Ct. 950, 953, 2 L.Ed.2d 1001 " * * * the False Claims Act was not designed to reach every kind of fraud practiced on the Government."

The decisions relied upon by the Government, and reviewed above, do not persuade us that we have erroneously interpreted the *Cohn, Hess* and *McNinch* decisions of the Supreme Court on the question of what constitutes a "claim" under the Act.

In our construction of the False Claims Act, we have kept in mind the warning of the Supreme Court in *McNinch*:

" * * * that in determining the meaning of the words 'claim against the Government' we are actually construing the provisions of a criminal statute.[5] Such provisions must be carefully restricted, not only to their literal terms but to the evident purpose of Congress in using those terms, particularly where they are broad and susceptible to numerous definitions." (Footnote omitted.) 356 U.S. at 598, 78 S.Ct. at 952.

The Government argues that the construction which we place upon the False Claims Act " * * * would provide an open invitation to seek and obtain by deception public monies to which there is no entitlement." Assuming that this would be the result, it would not be a valid reason for giving the Act a broader interpretation than the Supreme Court has sanctioned. Moreover, if there is need for transactions such as this to be covered by the False Claims Act, Congress may do so. In any event, this contention overlooks the criminal sanctions which are available against one who makes false statements for the purpose of influencing in any way the action of the C.C.C.[9]

 Accordingly, we hold that the loan applications here in question did not constitute "claims" under the Act because they were not based upon assertions of legal right against the Government. The district court therefore correctly determined that the False Claims Act is inapplicable under the undisputed facts of this case, and properly entered judgment for defendant.

Affirmed.