## Applicability of Statutes Prohibiting Strikes Against the Federal Government to Cooperative Extension Agents

Statutes prohibiting strikes by federal employees against the federal government do not apply where Cooperative Extension Agents participate in a strike against their university employer.

March 20, 1980

### MEMORANDUM OPINION FOR THE ACTING DIRECTOR, EXECUTIVE OFFICE FOR U.S. ATTORNEYS

This responds to the questions raised in the letter from the United States Attorney for the District of Hawaii, relating to the applicability of the statutes prohibiting strikes by employees of the federal government to certain individuals employed in the Cooperative Extension Service at the University of Hawaii. The Assistant General Counsel of the Department of Agriculture concluded in 1976 that the statutes in question operate to prohibit these individuals from joining a strike against the University. Although the matter is not free of doubt, we believe that Congress did not intend the no-strike statutes to reach this situation.

Section 7311 of Title 5 of the United States Code provides as follows:

> § 7311. Loyalty and striking
>
> An individual may not accept or hold *a position in the Government of the United States* or the government of the District of Columbia if he—
>
> (1) advocates the overthrow of our constitutional form of government;
>
> (2) is a member of an organization that he knows advocates the overthrow of our constitutional form of government;
>
> (3) *participates in a strike, or asserts the right to strike, against the Government of the United States* or the government of the District of Columbia; or
>
> (4) is a member of an organization of employees of the Government of the United States or of individuals employed by the government of the District of Columbia that he knows asserts the right to strike against the Government of the United States or the government of the District of Columbia. [Emphasis added.]

Conduct forbidden by 5 U.S.C. § 7311 is made criminal by 18 U.S.C. § 1918.

The position of the Department of Agriculture's Assistant General Counsel is as follows: First, that Cooperative Extension Agents hold "a position in the Government of the United States"; and second, that their participation in a strike of university employees would be a strike "against the Government of the United States." The Assistant General Counsel argues that the coverage of the no-strike statutes is very broad, and that they apply to "all forms of Federal employment." He acknowledges that Cooperative Extension Agents at the University of Hawaii are "university employees," but points out that at the same time they hold federal Schedule A appointments in the Extension Service, and also are covered by the federal Civil Service Retirement System.[1] Because Cooperative Extension Agents hold "a form of Federal employment," they are within the class covered by the no-strike statutes. In addition, he concludes that "[b]ecause the extension activities are simultaneously State and Federal activities, striking against these activities would be a simultaneous strike against the State and Federal governments." Therefore, Cooperative Extension employees who participate in a strike against the University of Hawaii are subject to "loss of their Federal appointment and criminal prosecution."

It is a well-established principle that where criminal penalties are involved, as they are here, the type of conduct proscribed by a statute must be narrowly construed. *United States* v. *Resnick,* 299 U.S. 207, 209 (1936); *United States* v. *Hartwell,* 73 U.S. (6 Wall) 385, 395 (1867). In *United States* v. *McNinch,* 356 U.S. 595 (1958), the question presented was whether a lending institution's application to the Federal Housing Administration for credit insurance was a "claim against the Government" within the meaning of the False Claims Act. In concluding that it was not, the Supreme Court stated:

> [I]t must be kept in mind . . . that in determining the meaning of the words "claim against the Government" we are actually construing the provisions of a criminal statute. Such provisions must be carefully restricted, not only to their literal terms but to the evident purpose of Congress in using those terms, particularly where they are broad and susceptible to numerous definitions.

[1] Cooperative Extension Agents are appointed "to implement cooperative federal-state extension programs for agriculture and home economics under the Smith-Lever Act (7 U.S.C. §§ 341-349)." Authority for these appointments is found in 5 C.F.R. § 213.3113(a)(1), which authorizes Agriculture to grant appointments in the excepted service to persons employed in field positions, the work of which is financed jointly by Agriculture and "cooperating non-federal entities." We understand that Cooperative Extension Agents are generally already employed by the state when they receive their Schedule A appointments, and that they continue afterwards to be paid by the state and governed by rules and requirements applicable to state employees.

356 U.S. at 598 (citations omitted). *See also United States* v. *Katz,* 271 U.S. 354, 362 (1926) ("General terms descriptive of a class of persons made subject to a criminal statute may and should be limited where literal application of the statute would lead to extreme or absurd results, and where the legislative purpose . . . would be satisfied by a more limited interpretation"); *United States ex rel. Marcus* v. *Hess,* 317 U.S. 537, 542 (1943) ("we must give [a criminal statute] careful scrutiny lest those be brought within its reach who are not clearly included. . . .").

Even if Cooperative Extension Agents are considered federal employees for some purposes, we find nothing in the terms of the no-strike statutes or in their legislative history suggesting that Congress intended them to apply in situations where the object of a strike is a non-federal entity or activity being supported by federal funds. Section 7311 of Title 5 and § 1918 of Title 18 were enacted in 1955 (Pub. L. 330, 84th Cong., 1st Sess.), and consolidated several provisions in existing federal law relating to disloyalty and striking against the government. These existing no-strike provisions were found in § 612 of the Housing Act of 1949, § 305 of the Labor-Management Relations Act of 1947, and in successive appropriations riders beginning with the Third Urgent Deficiency Appropriations Act of 1946, 60 Stat. 269. *See* H.R. Rep. No. 1152, 84th Cong., 1st Sess. 2 (1955). The hearings in the House on the 1955 legislation show Congress' understanding of these laws as intended to protect the federal employer, and to prevent the disruption of federal governmental functions. For example, Congressman Bennett, who introduced the legislation in the House, told the Committee that they did not "prohibit a government employee with part-time private employment from striking against his private employer." *To Prohibit the Employment by the Government of Persons who are Disloyal: Hearings before the House Committee on Post Office and Civil Service,* 84th Cong., 1st Sess. 10 (1955). There is no indication of an intention to extend the statutory prohibition on striking to all public employees working on federally funded projects—as, for example, was accomplished explicitly with respect to certain political activity in § 12 of the 1948 Hatch Act. *See Oklahoma* v. *Civil Service Commission,* 330 U.S. 127 (1947).

When Cooperative Extension Agents strike against their university employer, they do so as employees of the University and not as employees of the federal government. While their participation in a strike may in some cases result in the disruption of a federal activity, we do not think Congress intended the federal no-strike statutes to reach so far.

LEON ULMAN
*Deputy Assistant Attorney General*
*Office of Legal Counsel*