UNITED STATES of America, Appellee,

v.

**Dale E. DUNCAN, Appellant.**

No. 86–5036.

United States Court of Appeals,
Fourth Circuit.

Argued Dec. 11, 1986.

Decided April 14, 1987.

---

**154**

Thomas M. Buchanan (John M. Dowd, Heron, Burchette, Ruckert & Rothwell, Washington, D.C., on brief), for appellant.

Theodore S. Greenberg, Asst. U.S. Atty. (Henry E. Hudson, U.S. Atty., Alexandria, Va., Daniel E. Fromstein, Trial Atty., Dept. of Justice, David B. Smith, Washington, D.C., on brief), for appellee.

Before ERVIN, WILKINSON, and WILKINS, Circuit Judges.

WILKINS, Circuit Judge:

Appellant was convicted of making a false statement in violation of 18 U.S.C.A. § 1001 (West 1976), submitting a false claim in violation of 18 U.S.C.A. § 287 (West 1969), and theft of government property in violation of 18 U.S.C.A. § 641 (West 1976). He asserts on appeal that the trial court gave an erroneous instruction in response to a question from the jury, and that the offense alleged in the false claim count is not cognizable under 18 U.S.C.A. § 287 (West 1969). Finding error with the jury instruction, we reverse the false statement and false claim convictions. The government concedes that the conviction on Count III (theft of government property) should be vacated.

## I.

Appellant, a lieutenant colonel in the U.S. Army, supervised an official covert intelligence support group which held itself out as a private security firm under the cover name Business Security International (BSI). In the summer of 1983, the Army scheduled an audit of BSI accounts. Appellant was required to account for approximately $157,000.00 which had been advanced to him for operational expenses. Three vouchers submitted by him were challenged and resulted in criminal charges.

One of the vouchers claimed $8,400.00 for the charter of a DC–3 airplane. The government alleged that $8,000.00 of the $8,400.00 was not paid from advanced funds. Appellant was charged with making a false statement and a false claim in Counts IV and V of the indictment. He was acquitted on these counts by a jury.

Appellant also allegedly submitted a voucher claiming $56,230.00 for the purchase of electronic equipment. The government alleged in Counts VI and VII that the equipment was paid for by another Army agency, not from funds advanced to appellant. The trial court dismissed the false statement and false claim counts regarding the equipment voucher at the close of the government's case.

The third voucher, which was the basis for Counts I and II, claimed $796.00 for a round-trip airline ticket from Washington, D.C. to California. Appellant submitted an expense report form listing $796.00 for "Plane-Rail Bus Fare" and a handwritten note stating:

> I can not [sic] find my airline ticket to SAN/SFO/RTN IAD—please find submitted a "Mileage Plus" report indicating the flights I actually used and a copy of my wife's ticket—note that fare basis was tourist or a discount tourist fare. My wife and I used upgrade certificates—I claim $796.00.

The form report and note were accompanied by the Mileage Plus report and ticket copy as indicated.

In Counts I and II, the government charged appellant with making a false statement and submitting a false claim regarding the $796.00 ticket voucher. The indictment alleged that the claim was false because appellant had not paid for the ticket, but had obtained it with a certificate awarded pursuant to a United Airlines Mileage Plus program while traveling on government business.

## II.

■ In Count II, appellant was charged with making and presenting a false "claim upon and against the United States" for the $796.00 ticket "to be utilized to reduce [his] liability for previously advanced Army funds...." Appellant argues that Count II failed to allege an offense under the False Claim Act, 18 U.S.C.A. § 287 (West 1969). Specifically, he contends that the ticket voucher is not a "claim" under Section 287 since the voucher was submitted to reduce his liability for advanced funds and not for payment of money or property owed to him by the government. We find no merit to this contention and affirm the trial court holding that the indictment charged the making of a claim.

While Section 287 does not provide a definition of "claim," the term has been defined by the Supreme Court. *United States v. Cohn*, 270 U.S. 339, 46 S.Ct. 251, 70 L.Ed. 616 (1926). In construing the predecessor to Section 287, the Court stated:

> While the word "claim" may sometimes be used in the broad juridical sense of "a demand of some matter as of right made by one person upon another, to do or to forbear to do some act or thing as a matter of duty," it is clear, in the light of the entire context, that in the present statute, the provision relating to the payment or approval of a "claim upon or against" the government relates solely to the payment or approval of a claim for money or property to which a right is asserted against the government, based upon the government's own liability to the claimant.

*Id.* at 345–46, 46 S.Ct. at 252–53 (citation omitted).

Due to the financial structure and accounting methods of the BSI operation, the ticket voucher submitted by appellant was a request for a credit against his accountability for advanced funds. If a different structure and method had been used and the voucher was a request for reimbursement, it is clear that it would be a "claim." Criminal liability under Section 287 cannot turn on accounting methods. Regardless of whether a false voucher is submitted for a credit or for reimbursement, the government potentially suffers a monetary loss. Therefore, we hold that a voucher for reduction of liability for advanced funds is a "claim" under Section 287.

## III.

■ During deliberations, the jury sent a note to the trial judge asking: "Are the benefits of a 'free ticket' the property of the United States Government or the individual who earned it?" In instructing the jury that ownership was irrelevant, the trial judge stated:

> Whether it is the property of the United States or the individual who earned it is really irrelevant, at least insofar as counts 1, 2, 4 and 5 are concerned. The issue in those counts is whether— well, the issue in count 1 and 2 anyway, which deal with the ticket, the issue is whether the defendant knowingly and willfully falsely reduced his liability for advanced funds by $796 in September 1983; and the resolution of that issue does not depend on whether it was his property or the Government's property, the free ticket.
>
> I don't know whether that answers your question. I will ask you to return to your jury room and resume your deliberations.

The jury subsequently returned guilty verdicts on Counts I and II.

Appellant contends that the instruction was erroneous because proof of ownership of the free ticket is necessary to proof of the falsity of the claim for $796.00. The government maintains that the falsity of the voucher does not depend on ownership and the instruction was proper. Since ownership of the free ticket is crucial to the falsity of the statement, the instruction was erroneous.

Appellant was convicted of knowingly and willfully making a false, fictitious or fraudulent statement of material fact in a matter within the jurisdiction of a department of the United States in violation of 18 U.S.C.A. § 1001 (West 1976). He was also

found guilty of knowingly presenting a false, fictitious or fraudulent claim upon or against the United States in violation of 18 U.S.C.A. § 287 (West 1969). The common element of each crime is falsity.

The allegedly false statement and claim in issue is "I claim $796.00." Appellant asserts and the government now concedes that if he owned the free ticket, he had a colorable right to make a claim for reduction of his accountability for the value of the ticket. Thus, if the ticket was the property of the appellant, the statement is not false. However, if the ticket was the property of the government, he had no right to claim $796.00, and the statement is false. The government asserted its ownership of the free ticket by specifically alleging in Counts I–III of the indictment that:

> Prior to June, 1983, the appellant Dale E. Duncan became a member of the United Airlines Mileage Plus Program. Among other things a benefit of this program included free airline travel. At all times material to Counts I, II and III of this Indictment, the appellant Dale E. Duncan obtained benefits from the United Airlines Mileage Plus Program as a result of official business.

Clearly, the government was required to prove ownership of the free ticket. The trial court's instruction that the issue was irrelevant was reversible error.

### IV.

Appellant's convictions on Counts I and II are reversed. The conviction on Count III is vacated pursuant to the government's concession.

AFFIRMED IN PART AND REVERSED IN PART.

ERVIN, Circuit Judge, concurring:

I concur in the result reached in this case. I write separately, however, to express my concern about one facet of the decision, the construction of "claim" under § 287 of the False Claims Act. The attempt to define a "claim" in Part II of the opinion seems both unnecessary and inaccurate. The erroneous jury instructions are dispositive of Duncan's appeal; we

need not assume the troublesome task of defining a "claim" under § 287.

The opinion assumes this task and provides a view of "claim" which I do not share. My reading of the cases convinces me that "claim" enjoys a more restrictive reading in the False Claims Act than the opinion indicates. Especially compelling are cases on the civil analog to § 287, 31 U.S.C. § 3729. The initial False Claims Act had both criminal provisions, R.S. § 3490 (1874), and civil provisions, R.S. § 5438 (1874), so comparisons between the two seem appropriate. *See United States v. Winchester,* 407 F.Supp. 261, 271–72 (D.Del.1975). These cases suggest that only actions causing the government to pay out money are claims within the False Claims Act. *See United States v. McNinch,* 356 U.S. 595, 599, 78 S.Ct. 950, 952, 2 L.Ed.2d 1001 (1958) (test is whether the government suffers "immediate financial detriment"). Where the defendant simply tries to reduce his accountability to the government, this does not constitute a "claim" under the statute. *See, e.g., Black Prince Distillery, Inc. v. United States,* 586 F.Supp. 1169 (D.N.J.1984) (taxpayer's effort to reduce tax liability is not a "claim" under the False Claims Act).

Here, the receipts Duncan submitted, including his airline ticket voucher, would merely reduce his accountability or liability for the funds advanced him by the Army. The fact that the government "potentially suffers a monetary loss," as the opinion states, does not seem to satisfy the "immediate financial detriment" test in *McNinch.* Moreover, the opinion's assertion that, if a different structure was employed and Duncan had submitted a voucher for "reimbursement," this would constitute a "claim" is precisely the point, but the opinion takes only the first half of it. In my view, the cases indicate that the structure is crucial in determining whether or not a "claim" is made upon the government. *See United States v. Neifert-White Co.,* 390 U.S. 228, 231–33, 88 S.Ct. 959, 961–62, 19 L.Ed.2d 1061 (1968); *United States ex rel. Marcus v. Hess,* 317 U.S. 537, 542–44, 63 S.Ct. 379, 383–84, 87 L.Ed. 443 (1942).

Since Duncan did not seek a reimbursement, he did not make a "claim" within the False Claims Act.