**UNITED STATES of America,
Plaintiff/Appellee,**

v.

**Leon R. JACKSON,
Defendant/Appellant.**

No. 85–5272.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted April 4, 1988.

Decided May 4, 1988.

Michael J. Treman, Santa Barbara, Cal., for defendant-appellant.

Maurice A. Leiter, Asst. U.S. Atty., Los Angeles, Cal., for plaintiff-appellee.

Before BRUNETTI and THOMPSON, Circuit Judges, and PRO,* District Judge.

BRUNETTI, Circuit Judge:

I

Leon Jackson appeals his conviction, following a jury trial, of making false claims against the United States in violation of 18 U.S.C. § 287. Jackson was indicted on nine counts of knowingly presenting false claims for the proceeds of government checks. The indictment alleged that Jackson knew that he had already received nine Veterans Administration (VA) educational benefits checks when he submitted claims denying receipt of the checks.

Jackson allegedly had received the checks during the 1979–1980 school year. In 1980, the VA discovered that Jackson had withdrawn from school, and therefore had been ineligible to receive the checks during the 1979–1980 school year. Jackson was notified that his benefits had been terminated because of his voluntary withdrawal from school.

In June 1982, Jackson submitted claim forms to the VA asking that the checks be reissued to him, claiming that he had never received them. In 1983, the Treasury Department sent to Jackson a second set of claim forms for the checks, and enclosed microfilm copies of the checks showing that they had been endorsed and deposited. Jackson completed these claim forms, stating he had never received, endorsed, cashed, or deposited the checks, and submitted them to the Treasury Department. The submission of the second set of forms constitute the nine false claims charged in the indictment.

Jackson pleaded not guilty to the charges, and the case went to trial on October 1, 1985. The jury returned guilty verdicts on all nine counts in the indictment. Jackson timely appeals. Jackson contends that there was insufficient evidence to convict him because the forms he submitted to the United States Treasury Department were not claims within the meaning of the statute, that the district court erred in instructing the jury on the meaning of filing a false claim against the United States, and that the district court erred in admitting evidence of other forms he filed with the VA. We affirm.

II

A. *Claims*

Jackson contends that the TFS 1133 forms he submitted to the Treasury Department were not claims under 18 U.S.C. § 287 [1] because the "claim language" of the form was stricken by the government before it submitted the forms to him for signature.[2] Apparently Jackson is arguing that he was not attempting to obtain any additional money from the government by submitting the TFS 1133 forms, but was

---

* Honorable Philip M. Pro, United States District Judge for the District of Nevada, sitting by designation.

1. 18 U.S.C. § 287 provided at the time of Jackson's offense:

"Whoever makes or presents to any person or officer in the civil, military, or naval service of the United States, or to an department or agency thereof, any claim upon or against the United States, or any department or agency thereof, knowing such claim to be false, fictitious, or fraudulent, shall be fined not more than $10,000 or imprisoned not more than five years, or both."

Section 287 was amended on October 27, 1986. The amendment does not affect the analysis of Jackson's claim.

2. The TFS 1133 forms submitted by Jackson to the Treasury Department in 1983 had the following language crossed-out by the government in item 10. "I/we hereby make claim for the proceeds of the above described check." Item 10 still stated that "I/we understand that if I/we cash both the original and settlement checks, I/we must promptly refund the amount of the overpayment, and that failure to do so could result in legal action being taken to recover the overpayment either directly or from subsequent payments to which I/we are entitled." Additionally, the claim forms stated "I/We, Leon R. Jackson, am/are the claimant(s) of this check ..." Jackson also checked on the forms that he had *not* received, signed, cashed, deposited, or received any money or benefit from the cashing of the checks.

attempting fraudulently to reduce his liability to the government by claiming he never received the VA checks that he was not entitled to. In this respect the issue in this case is narrow and precise: Does § 287 reach "claims" for reduction of liability to the government. We hold that it does.

Section 287, part of the Criminal False Claims Act, derives from the original False Claims Act, Rev.Stat. §§ 3490, 5438. The original Act provided for both civil and criminal penalties. The debates in Congress when the original Act was passed suggest that the Act was intended to reach all types of fraud, without qualification, that might result in financial loss to the government. *United States v. Neifert–White Co.*, 390 U.S. 228, 232, 88 S.Ct. 959, 961, 19 L.Ed.2d 1061 (1968).

In *Neifert–White*, the Court construed the Civil False Claims Act, Former 31 U.S.C. § 231, which although codified, remained unaltered from the original civil provisions.[3] *Id.* at 228–29 n. 1, 88 S.Ct. at 959–960 n. 1. In refusing to read the statute narrowly, the Court stated:

> In the various contexts in which questions of the proper construction of the Act have been presented, the Court has consistently refused to accept a rigid, restrictive reading, even at the time when the statute imposed criminal sanctions as well as civil.

*Id.* at 232, 88 S.Ct. at 961–962.

Section 287 was *not* identical to the original criminal provisions. *See id.* at 228–29 nn. 1, 3, 88 S.Ct. at 959–61 nn. 1, 3. However, the text still employed broad language, capable of an unrestrictive construction. Because of the origin, language, and remedial objective of § 287, we adhere to the practice evinced in *Neifert–White*, and refuse to give this criminal provision a narrow reading. *See United States v. Winchester*, 407 F.Supp. 261, 274 (D.Del. 1975) (recognizing that § 287 is an exception to the tradition of giving strict construction to criminal statutes).

We see no difference between the act of filing a form fraudulently to cause the government to abandon its investigation of an overpayment, and the act of filing a form fraudulently to cause the government to make payment. The latter is the classic fraudulent claim, *see, e.g., United States v. Olsowy*, 836 F.2d 439 (9th Cir.1988), while the former is such a claim disguised only by the subtleties of accounting procedure. The Fourth Circuit recognized this in *United States v. Duncan*, 816 F.2d 153 (4th Cir.1987).

In *Duncan*, the defendant had not filed a fraudulent voucher to cause the government to reimburse him for air fare (that clearly would have been a § 287 claim). Rather, the defendant filed a fraudulent voucher to cause the government to credit his account for previously advanced funds. In rejecting the defense that this conduct did not constitute a § 287 claim, the court stated that criminal liability under § 287 cannot turn on accounting methods. "Regardless of whether a false voucher is submitted for a credit or for reimbursement, the government potentially suffers a monetary loss." *Id.* at 155.

Similarly, here we are confronted with a defendant seeking to obtain a credit for previously advanced funds. Our focus must be on the substance of the transaction, the disbursement of government funds, and not on the timing or form of the entry in the government's accounting ledgers. Submission of a form to obtain a credit for previously advanced government funds is as violative of § 287 as submission of a form to obtain the funds themselves, when the submission is "false, fictitious, or fraudulent." In either case the government would suffer a monetary loss if the defendant is successful.

It is uncertain whether the jury found, as the basis for its verdict, that Jackson intended the TFS 1133 forms he submitted in 1983 to reduce his liability or to cause reissuance of the checks. However, as we will further discuss, the district court's jury instructions acknowledged both theories, and we need not be troubled by the

---

**3.** Former 31 U.S.C. § 231 has been amended and recodified at 31 U.S.C. § 3729.

uncertainty.[4] There is sufficient evidence in the record to support a finding, under either theory, that Jackson made § 287 claims.[5]

Accordingly, Jackson's contention that he had not submitted claims within the meaning of § 287 is without merit.[6]

### B. *Jury Instructions*

■ Jackson also contends that the district court erred in instructing the jury on the meaning of filing a false claim against the United States. The trial court is given substantial latitude in tailoring the instructions, and a challenge to the district court's language or formulation is reviewed only for an abuse of discretion. *United States v. Burgess*, 791 F.2d 676, 678 (9th Cir.1986); *United States v. Echeverry*, 759 F.2d 1451, 1455 (9th Cir.1985). Jury instructions are considered as a whole to determine if they are misleading or inadequate. *Burgess*, 791 F.2d at 658.

In instructing the jury on what constitutes a false claim, the district court compared the filing of a false tax return to the charges against Jackson. Jackson argues that this comparison was an incorrect statement of the law and could have misled the jury. This court has affirmed a conviction under section 287 for filing claims for tax refunds knowing that such claims were fraudulent. *United States v. Miller*, 545 F.2d 1204, 1216 (9th Cir.1976), *cert. denied*, 430 U.S. 930, 97 S.Ct. 1549, 51 L.Ed.2d 774 (1977). Hence, the district court's instruc-

tion was not an incorrect statement of the law, and was not an abuse of discretion.

Jackson also argues that two of his proffered jury instructions should have been accepted. Instruction B stated that a fraudulent reduction of a defendant's liability to the government is not a false claim. As discussed above, this is an incorrect statement of the law, and that instruction is unacceptable. Instruction C sought to distinguish between a false claim and a false statement. However, it is well-settled that the same conduct may violate both section 287 and 18 U.S.C. § 1001, which prohibits false statements. *See Oslowy*, 836 F.2d at 441–42; *United States v. Ruster*, 712 F.2d 409 (9th Cir.1983) (same conduct may violate section 287 and false statement provision of Social Security Act). Therefore, that instruction is unnecessary.

Moreover, the instructions actually given by the district court adequately covered the issues, and this court need not decide whether the proposed instructions may have been preferable. *United States v. Miller*, 688 F.2d 652, 662 (9th Cir.1982). The court instructed the jury on the two elements of section 287: that the defendant submit a false claim and that he do so willingly and knowingly. The court defined the term "claim" as "a demand for money or transfer of public property or an attempt to cause the government to pay out sums of money." The court also told the jury: "You have to find him guilty of what's said in the indictment ... in a sense the indictment charges that the claims

---

**4.** The language of the indictment is capable of either construction: "Jackson made ... nine claims for the proceeds of a government check."

**5.** In arguing that by filing the forms in 1983 he did not intend to cause reissuance of the checks, Jackson effectively concedes that he did intend to reduce his liability. Further, there was evidence from which the jury could have concluded that Jackson intended to cause reissuance of the checks. Despite the government's crossing out the "I hereby make claim" language the TFS 1133 form repeatedly uses the word "claim." The TFS 1133 form is a claim to be submitted when a recipient seeks reimbursement for a check never received. Each form states, "I/We Leon R. Jackson, am/are the claimants of this check ..." Each form uses "claim" in its title

and instructions, warns the recipient that it is a crime to file a false claim against the United States, and sets forth the language of 18 U.S.C. § 287.

**6.** In *United States v. Howell*, 318 F.2d 162 (9th Cir.1963), this court held that concessionaires who understated their gross receipts had not made § 287 claims because their conduct was intended to reduce amounts owed to the government rather than to obtain payment from the government. Whereas that decision seems to be in conflict with our decision today, it should be noted that *Howell* was decided prior to the Supreme Court's decision in *Neifert-White*. In light of *Neifert-White*, we need not follow *Howell's* narrow construction of a claim under § 287.

were for proceeds, or money, proceeds of government—government checks ... but be sure to look at the indictment in the light of the statute.... [T]he actual getting of the proceeds or the actual pay out by the government is not the material thing here. The material thing is the filing of a false claim to get the proceeds."

Thus, because Jackson's two proffered instructions are either incorrect or unnecessary, while the district court's instructions are adequate, the district court did not abuse its discretion by refusing Jackson's instructions.

### C. *Prior Claim Forms*

■ Jackson finally contends that the district court abused its discretion in permitting the government to introduce evidence of the first set of VA claim forms submitted by Jackson in 1982. In those 1982 claim forms, Jackson claimed that he had never received the nine checks sent to him during the 1979–80 school year. A challenge to the admissibility of evidence is reviewed for an abuse of discretion. *United States v. Jenkins*, 785 F.2d 1387, 1396 (9th Cir.), *cert. denied,* — U.S. —, 107 S.Ct. 192, 93 L.Ed.2d 125, — U.S. —, 107 S.Ct. 288, 93 L.Ed.2d 125 (1986).

■ The evidence was properly admitted under Fed.R.Evid. 404(b). The fact that Jackson submitted prior false claims involving the same nine VA checks is probative on issues of intent, knowledge, good faith and absence of mistake in his later dealings with the Treasury Department in 1983. *See Jenkins,* 785 F.2d at 1395. In addition, the totality of Jackson's conduct while involved in this scheme is admissible as evidence and subject to the jury's considerations in its determination of his intent. *See United States v. Soliman,* 813 F.2d 277, 279 (9th Cir.1987).

Jackson also contends that the 1982 claim forms were highly prejudicial, and should not have been admitted under Fed. R.Evid. 403. The 1982 claim forms contain the language "I wish to make formal claim to the Treasury Department for the issuance of a substitute check ..." Jackson argued that because the claim language

had been stricken in the 1983 forms that were part of the indictment, there was a risk that the jury would find him guilty of the charges because of the submission of the 1982 forms.

However, the submission of both sets of forms were part of the same scheme to avoid his liability for the VA checks issued during the 1979–1980 school year. His submission of similar forms with similar falsehoods shows that the striking of the claim language on the second set of forms was irrelevant to Jackson's intent to avoid repayment liability. The district court admitted the 1982 claim forms only after both sides presented their arguments on probative value and undue prejudice. The district court's determination that the probative value was not outweighed by the prejudice is supportable on this record. Moreover, the jury was adequately instructed that Jackson was not on trial for any conduct not alleged in the indictment. There was no abuse of discretion.

Accordingly, Jackson's conviction is AFFIRMED.