979 F.2d 857
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Edgar Ryan WITHERSPOON, Defendant-Appellant.
 Nos. 90-50166, 90-50705.
 United States Court of Appeals, Ninth Circuit.
 Submitted Nov. 4, 1992.*
Decided Nov. 19, 1992.
 
 Before D.W. NELSON, CYNTHIA HOLCOMB HALL and RYMER, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Edgar Ryan Witherspoon appeals his conviction for violation of 21 U.S.C. § 841(a)(1) (possession of a controlled substance with intent to manufacture, distribute or dispense). Witherspoon argues that his conviction should be reversed because the district court admitted unfairly prejudicial evidence, provided improper jury instructions and abused its discretion by failing to grant either of his two motions for a new trial. We have jurisdiction pursuant to 28 U.S.C. § 1291 and we affirm.
 
 
 3
 * Witherspoon argues that the district court committed reversible error by allowing Kevin Clark, Witherspoon's former business associate, to testify for the government as to Witherspoon's prior drug selling activities. Witherspoon claims that such evidence is either irrelevant or alternatively, is inadmissible, highly prejudicial evidence of "other crimes" used for the purpose of proving bad character. See Fed.R.Evid. 403, 404(b).[1] The district court's decisions regarding the relevance of evidence and the balancing of the probative value of evidence against its prejudicial effect are both reviewed for abuse of discretion. United States v. Kessi, 868 F.2d 1097, 1107 (9th Cir.1989). Evidentiary rulings will be reversed for abuse of discretion only if such nonconstitutional error more likely than not affected the verdict. United States v. Yin, 935 F.2d 990, 994 (9th Cir.1991).
 
 
 4
 Evidence of Witherspoon's employment in Clark's crack cocaine operation is directly relevant and was properly admitted under Fed.R.Evid. 404(b). Witherspoon was charged with "knowingly and intentionally possess(ing) with intent to distribute more than 50 grams, that is, approximately 303 grams of a substance containing cocaine base." Clark testified that he had employed Witherspoon as a seller of narcotics for approximately a year and that Witherspoon played the important role of "overseer" of his crack business. Clark's testimony was permissibly introduced to show Witherspoon's knowledge, intent and absence of mistake--that Witherspoon in fact knew what crack cocaine was and was aware that the paper bag, with which he was arrested, contained a substantial quantity of cocaine. See United States v. Jackson, 845 F.2d 880, 884 (9th Cir.), cert. denied, 488 U.S. 857 (1988) (fact that defendant submitted prior false claims is probative on issues of intent, knowledge, good faith and absence of mistake in his later dealings); United States v. Scott, 767 F.2d 1308, 1310-11 (9th Cir.1985) (evidence of prior drug activity, for which defendant was not convicted, seized during a warranted search of defendant's home is admissible to prove the elusive intent element of 21 U.S.C. § 841(a)(1)). The district court did not abuse its discretion by admitting evidence of Witherspoon's various activities as a crack dealer in Clark's employ.
 
 II
 
 5
 Witherspoon next argues that the district court erroneously denied his first motion for a new trial based on Witherspoon's proffered evidence of jury misconduct.[2] Witherspoon's motion was supported by the Declaration of Susan Marquez, a juror. The declaration lists four instances of alleged "extraneous" pressure or "outside influence," not precluded by Fed.R.Evid. 606(b), brought to bear on the jury's deliberative process.[3] The district court, without conducting an evidentiary hearing, held that the declaration was "in no way permissible to impeach the jury verdict and cannot impeach the jury verdict" and thus denied Witherspoon's first motion for a new trial.
 
 
 6
 The district court's decision not to grant a motion for a new trial is reviewed for abuse of discretion. United States v. George, 960 F.2d 97, 101 (9th Cir.1992). The defendant carries a "significant burden" to show that the district court abused its discretion in denying the motion for a new trial. United States v. Endicott, 869 F.2d 452, 454 (9th Cir.1989).
 
 
 7
 The juror's declaration, on its face, fails to demonstrate the "extraneous" influence required for admissibility of juror testimony under Fed.R.Evid. 606(b). "Juror testimony is admissible only concerning facts bearing on extraneous influences on the deliberation, in the sense of overt acts of jury tampering." United States v. Falsia, 724 F.2d 1339, 1343 (9th Cir.1983) (quoting United States v. Pimentel, 654 F.2d 538, 542 (9th Cir.1981)) (emphasis in original). Witherspoon's first alleged instance of the application of external force, that the court coerced the jurors to reach a quick verdict by advising the jury that if no verdict were reached by 4:00 P.M. on Thursday the jury would have to return on the day after Christmas, simply does not reflect the kind of outside influence to which Fed.R.Evid. 606(b) is addressed. An individual juror's subjective perception of "pressure" due to unavoidable time constraints does not suffice for purposes of Rule 606(b). See United States v. Marques, 600 F.2d 742, 747 (9th Cir.), cert. denied, 444 U.S. 1019 (1979) (asserted "external pressure" to reach a verdict caused by the trial judge's decision to keep the jury "late a couple of nights" was not sufficient outside influence under Rule 606(b)).
 
 
 8
 Similarly, Witherspoon's remaining three examples of juror misconduct indicate no cognizable external influence. These last three examples exclusively concern internal jury discussions--the declaration does not allege that any non-juror affected the integrity of the jury's deliberations. As the court noted in Hard v. Burlington Northern R.R. Co., 870 F.2d 1454, 1461 (9th Cir.1989):
 
 
 9
 [t]he type of after-acquired information that potentially taints a jury verdict should be carefully distinguished from the general knowledge, opinions, feelings, and bias that every juror carries into the jury room. Voir dire questioning is the proper method of uncovering prejudicial character traits of potential jurors.
 
 
 10
 The declaration fails to point to any "specific" or specialized outside information impermissibly introduced by a juror. See United States v. Navarro-Garcia, 926 F.2d 818, 821 (9th Cir.1991) ("[a] juror's personal experience may constitute extrinsic evidence only when a juror has personal knowledge regarding the parties or the issues involved in the litigation that might affect the verdict").
 
 
 11
 The juror's declaration does not demonstrate the requisite external influence and was properly excluded pursuant to Fed.R.Evid. 606(b). Witherspoon fails to carry his "significant burden" of demonstrating that the district court's denial of his first motion for a new trial constitutes an abuse of discretion.
 
 III
 
 12
 Witherspoon argues that the district court improperly refused to instruct the jury on the lesser-included offense of simple cocaine possession. The trial judge concluded that there was no real evidence to support Witherspoon's proposed charge of possession without intent to distribute. We review the denial of a lesser-included offense instruction for abuse of discretion. United States v. Linn, 880 F.2d 209, 217 (9th Cir.1989).
 
 
 13
 The district court's ruling was not an abuse of discretion. To show entitlement to a lesser-included offense instruction the defendant must meet a two-step test. First, the defendant must prove that the offense on which instruction is sought is a lesser-included offense of that charged. Second, the defendant must show that the jury rationally could conclude that the defendant was guilty of the lesser-included offense but not of the greater. United States v. Pedroni, 958 F.2d 262, 267-68 (9th Cir.1992).
 
 
 14
 At trial, Witherspoon requested that the court instruct the jury on the crime of possession of a controlled substance, a lesser-included offense of possession with intent to distribute. However, Witherspoon's trial defense centered not on the "intent to distribute" issue but rather, on the "knowing and intentional possession" question. In other words, Witherspoon's defense was essentially that he did not knowingly and intentionally possess the cocaine with which he was caught. To this end, Witherspoon testified that he did not know what crack cocaine was prior to his arrest and that he did not know that the paper bag, that he was arrested holding, contained narcotics. Based on Witherspoon's defense, the jury could not rationally find Witherspoon guilty of simple possession and acquit him of possession with intent to distribute. See United States v. Linn, 880 F.2d 209, 218 (9th Cir.1989) ("[a] rational jury could not have convicted appellant of any lesser-included offense without relying on the precise evidence which establishes guilt of the offenses charged"). Witherspoon's proposed jury instruction was properly denied.[4]
 
 IV
 
 15
 Witherspoon claims that the court improperly gave a jury instruction on aiding and abetting. A district court's formulation of jury instructions is reviewed for an abuse of discretion. United States v. Johnson, 956 F.2d 197, 199 (9th Cir.1992). "Our inquiry is whether the jury instructions as a whole are misleading or inadequate to guide the jury's deliberations." United States v. Joetzki, 952 F.2d 1090, 1095 (9th Cir.1991). The district court acted properly within its discretion because aiding and abetting is implied in every federal indictment for a substantive offense. United States v. Armstrong, 898 F.2d 734, 737 (9th Cir.1990).
 
 V
 
 16
 Witherspoon argues that the district court abused its discretion in denying his second motion for a new trial based on newly discovered evidence. Specifically, Witherspoon contends that Kevin Clark, a government witness, had committed perjury prior to trial by applying, on two separate occasions, for a California driver's license using an alias. In addition, Witherspoon claims that it was determined after trial that Clark had made statements to his probation officer which "were diametrically opposed to his testimony at the trial."
 
 
 17
 The Ninth Circuit has established a five-part test to determine whether a defendant's motion for a new trial should be granted on the basis of newly discovered evidence:
 
 
 18
 (1) It must appear from the motion that the evidence relied on is, in fact, newly discovered, i.e., discovered after the trial; (2) the motion must allege facts from which the court may infer diligence on the part of the movant; (3) the evidence relied on must not be merely cumulative or impeaching; (4) must be material to the issues involved; and (5) must be such as, on a new trial, would probably produce an acquittal.
 
 
 19
 United States v. Cervantes, 542 F.2d 773, 779 (9th Cir.1976) (emphasis added) (citations omitted). The district court held that Witherspoon failed to satisfy each part of this five-part test.
 
 
 20
 The district court acted within its discretion in denying Witherspoon's second motion for a new trial. Neither Clark's false driver's licenses nor Witherspoon's Presentence Report, which allegedly contradicts Clark's trial testimony, constitutes "newly discovered" evidence. During pretrial discovery, Witherspoon was provided with evidence that Clark had applied for and obtained driver's licenses using an alias. At trial, Witherspoon's attorney cross-examined Clark on Clark's practice of using the names of others to disguise his identity. Further, paragraph 28 of the PSR is not inconsistent with testimony at trial.[5]
 
 VI
 
 21
 Finally, Witherspoon alleges that the government withheld evidence in violation of Brady v. Maryland, 373 U.S. 83 (1963). Witherspoon asserts that the government knew before trial that Clark had received two different driver's licenses in two names other than his own. Witherspoon argues that the government's failure to timely disclose this material evidence of perjury mandates reversal. Witherspoon's claim is baseless.
 
 
 22
 Pursuant to Witherspoon's request for discovery under Rule 16, the government, on October 6, 1989, sent to Witherspoon's attorney a report from the California Department of Motor Vehicles depicting various driver's licenses seized from Clark. One of these licenses bore Clark's photograph along with the name "Kevin DeLonne Carter." Witherspoon was directly informed of the existence of this evidence, which would form the basis for the issuance of an arrest warrant on July 6, 1990 in Clark's name, over two months before Witherspoon's December, 1989 trial. There is no support for Witherspoon's claim that the government improperly suppressed evidence.
 
 
 23
 AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Witherspoon's only objection at trial was that such evidence was not relevant. He raises his 404(b) objection for the first time on appeal
 
 
 [2]
 The government opted not to raise any timeliness objections to Witherspoon's first motion for a new trial
 
 
 [3]
 The Declaration of Susan Marquez states:
 "During the jury deliberations the following events took place:
 a) After the Court advised the jury that if it did not reach a verdict by 4:00 P.M. on Thursday afternoon the jury would have to return the date after Christmas, one juror stated that he had other plans and that he was not coming back after Christmas.
 b) During the deliberations several jurors stated that because this was Mr. Witherspoon's first offense he would be placed on probation and would not receive a prison term.
 c) The jury foreman, who works for the Sherriff's [sic] department as an institutional cook, stated that on the basis of his experience with criminal behavior, Mr. Witherspoon was being untruthful.
 d) Concerning the testimony about the identification of Mr. Witherspoon as another man at the time of his arrest, I heard statements by at least one juror to the effect that all blacks look the same, so how can you tell them apart?"
 
 
 [4]
 Witherspoon contends that the government's attorney, by making no effort to dissuade the District Court from the view that Kevin Clark had no information to offer that would support the giving of the instruction, engaged in prosecutorial misconduct which mandates reversal. However, as the government correctly notes, neither Clark's trial testimony nor his statement to the probation officer supports Witherspoon's proposed lesser-included offense instruction. Additionally, the two do not conflict
 The alleged conflict between Clark's trial testimony and his statements to the probation officer, set forth in Witherspoon's Presentence Report in p 28, are discussed further below.
 
 
 [5]
 Paragraph 28 of the Presentence Report states:
 "Witherspoon states that Clark at no time told him what was going on that day (a statement Clark corroborated in his interview with the Probation Officer) and that he had no idea that there was cocaine in the car or in the bag. He says the cocaine was hidden under Clark's seat. (Clark during his interview indicated that Witherspoon was not ignorant to cocaine being in the car just unknowledgeable about the transaction that was to take place.)"
 At trial, Clark testified that Witherspoon was employed in his crack operation and that Witherspoon knew that the paper bag contained cocaine. Clark never stated that Witherspoon knew all of the details of the planned drug transaction. The Presentence Report contains no "newly discovered" information.