**UNITED STATES, Appellant,**

v.

**Dale E. DUNCAN, Lieutenant Colonel
U.S. Army, Appellee.**

No. 68,272.
CMR No. 8601129.

U.S. Court of Military Appeals.

Argued Feb. 3, 1993.

Decided Oct. 28, 1993.

For the United States: *Major Joseph C. Swetnam* (argued); *Colonel Dayton. M. Cramer* and *Lieutenant Colonel Joseph A. Russelburg* (on brief).

For the Accused: *Captain Robin N. Swope* (argued); *Lieutenant Colonel James H. Weise* (on brief).

*Opinion of the Court*

EVERETT, Senior Judge:

This appeal concerns the legal effect of a lengthy delay in commencing the pretrial investigation under Article 32, Uniform Code of Military Justice, 10 USC § 832, and trial of the accused by court-martial while the Government prosecuted related charges against him in a Federal District Court. Under the circumstances present here, we agree with the Court of Military Review that the delay was impermissible and that RCM 707, Manual for Courts–Martial, United States, 1984, as it then read, required dismissal of the charges.

## I

In the early 1980s Lieutenant Colonel Duncan was assigned to a classified activity under the general supervision of the Department of the Army. As a "cover" for these activities, in the spring of 1983 he participated in establishing a civilian business under the cover name of Business Security International (BSI).

On September 12, 1983, a warrant officer assigned to the same activity alleged that Duncan and others were mismanaging the funds appropriated for their operations and were using the money for personal gain. An audit was conducted later that month; and, in turn, the Army Inspector General commenced an investigation of BSI. *See* Army Regulation 15–6. The investigating officer, a major general, concluded that there were possible criminal violations and recommended involvement of the FBI and the Department of Justice (DoJ).

Thereupon the General Counsel of the Army contacted the DoJ, which took command of the investigation. In mid-December 1983, Mr. Daniel E. Fromstein, a DoJ attorney who was purportedly an expert in interception of communications, was assigned to investigate. Also, Mr. Theodore Greenberg, an Assistant United States Attorney for the Eastern District of Virginia—who had relevant experience with frauds and with classified operations—was detailed to study possible federal prosecution as an outgrowth of the BSI investigation. Ultimately the investigation by DoJ became wide-ranging and delved not only into BSI and Duncan's involvement therewith, but also into other special operations and matters not described in the record.

Apparently by this time the Army had concluded that, under a Memorandum of Understanding between the Departments of Justice and Defense[1], it should leave active investigation of the matter to DoJ;

and so for almost one year the Army carried out no further investigation. However, military authorities subsequently reopened their investigation and began to consider prosecution of Duncan and others.

On May 9, 1985, a set of charges were preferred against Duncan, who was notified thereof 4 days later.[2] On September 4, 1985, additional charges were preferred, of which he was notified on September 17, 1985. Then on November 19, 1985, he was indicted on related charges in the United States District Court for the Eastern District of Virginia. On February 12, 1986, Duncan was convicted in the District Court; he was sentenced there on March 14, 1986; and, in due course, he appealed to the Court of Appeals for the Fourth Circuit.

On April 7, 1986, an Article 32 pretrial investigation began of the charges then pending. On May 9, 1986, a second set of additional charges was preferred by military authorities. On June 25, 1986, the pretrial investigation was completed on all the charges.

Ultimately, on October 27, 1986, the Government began Duncan's trial on the merits—532 days after he had been notified of the original charges against him and 405 days after notice of the first additional charges. Understandably, defense counsel moved to dismiss those charges by reason of denial of a speedy trial; but the motion was denied.

At trial, Duncan pleaded not guilty but was convicted of conspiracy to obstruct justice, violation of a lawful general regulation, larceny (13 specifications), forgery, making a false claim (2 specifications), conduct unbecoming an officer, obstruction of justice, and failure to account for public funds (18 USC § 643), in violation of Articles 81, 92, 121, 123, 132, 133, and 134, Uniform Code of Military Justice, 10 USC §§ 881, 892, 921, 923, 932, 933, and 934,

1. Memorandum of Understanding Between the Departments of Justice [(DoJ)] and Defense Relating to the Investigation and Prosecution of Crimes Over Which The Two Departments Have Concurrent Jurisdiction, App. 3, Manual for Courts–Martial, United States, 1984.

2. At that time, as the Court of Military Review noted, the Government mistakenly believed that the statute of limitations was about to run on many of the alleged offenses. 34 MJ 1232, 1235 n. 7 (1992).

respectively. He was sentenced to dismissal, confinement and forfeiture of $3,350.00 pay per month for 10 years, and a fine of $50,000. The convening authority reduced the confinement and the period of forfeitures to 7 years, but otherwise he approved the trial results.

On appeal, the Court of Military Review found that the Government had failed to prove beyond reasonable doubt any of the charges which were the subject of the second set of additional charges. 34 MJ 1232, 1245 (1992). The Government did not appeal this ruling; so dismissal of those charges is not before us. As to the remaining charges, the Court of Military Review decided that dismissal was necessary because of the violation of RCM 707. The Judge Advocate General of the Army then certified to us this issue:

> WHETHER THE ARMY COURT ERRED BY HOLDING THAT THE GOVERNMENT DID NOT HAVE GOOD CAUSE TO DELAY ITS PRETRIAL INVESTIGATION OF APPELLEE'S CASE FROM 14 MAY 1985 TO 19 NOVEMBER 1985 TO PERMIT THE DEPARTMENT OF JUSTICE TO PROSECUTE APPELLEE IN FEDERAL DISTRICT COURT.

## II

### A

To put this appeal into perspective, we should note that it concerns the last residue of a host of charges preferred by military and civilian authorities against several members of the Army who were assigned to BSI. In each instance, the prosecutors' efforts have been unsuccessful. Sergeant Major Barone was acquitted of all charges at trial. Most of LTC Byard's charges were dismissed by the Court of Military Review for want of a speedy trial;[3] and the Government did not appeal that decision. The charges against Colonel Longhofer were dismissed by the Court of Military Review; and, when the Judge Advocate General certified this decision to our Court,

we affirmed the decision below. *United States v. Longhofer*, 29 MJ 22 (CMA 1989).

On Duncan's appeal from the District Court, the Fourth Circuit reversed his convictions for false statements and false claims because of instructional error; and, in light of a Government concession of error, the Court of Appeals also vacated his conviction for theft of Government property. *See United States v. Duncan*, 816 F.2d 153 (4th Cir. 1987). Duncan was never retried by civilian prosecutors on any of these charges.

### B

■ Upon our review of the certified issue now before us, we are convinced the Court of Military Review reached the correct result. RCM 707(e) required dismissal of any charges against Duncan if the Government were accountable for more than 120 days of the delay between notice to him of the preferral of charges and the commencement of trial on those charges. Therefore, as to the original charges, the Government had the burden of establishing that it was not accountable for more than 120 days of the 532 days of delay between notice to Duncan of those charges and the date when trial began. Likewise, as to the first set of additional charges, the Government's burden was to disprove responsibility for delaying trial more than 120 of the 405 days between notice of those charges and the date of trial.

In both instances, the delay resulted from requests by DoJ. As the court below suggested, the requests may have resulted from (1) a fallacious belief that, by agreement with the military authorities or otherwise, DoJ and its prosecutors could deprive courts-martial of "jurisdiction" over violations of the Uniform Code of Military Justice; (2) misconstruction of the Memorandum of Understanding; and (3) lack of adequate communication between DoJ and military prosecutors as to likely speedy trial problems if the Article 32 investigation and trial by court-martial were delayed for

---

3. *United States v. Byard,* 29 MJ 803 (ACMR 1989).

a long time. However, for our purposes the reasons for the delay are less important than the failure of military authorities to establish at trial good cause for relieving the Government of accountability.[4]

After the original charges against Duncan were preferred on May 9, 1985, the first documented DoJ request for delay in the military proceedings was contained in a letter dated September 10, 1985, from Mr. Fromstein to LTC Fred Bryant, assistant staff judge advocate for the Military District of Washington—whose commander was the convening authority in this case. This letter was written 120 days after notice of the original charges. Fromstein wrote Bryant a second letter requesting delay on September 26, 1985—only a few days after Duncan had been notified of preferral of the first set of additional charges. The Government did not establish when these letters were received by Bryant and when—or even if—they were reviewed by the convening authority; and apparently neither LTC Bryant nor the convening authority replied to these letters. The record gives no indication that Duncan or his counsel was informed of this correspondence; and the Government apparently concedes that Duncan was not informed thereof.

One reason for Mr. Fromstein's request for delay was to preclude Duncan from using an Article 32 pretrial investigation of the court-martial charges to discover information that would not be discoverable in the civilian trial and which might be used by the defense in that trial. Related to this

concern was a fear of possible "greymail" tactics by the accused. See 34 MJ at 1243.[5]

Mr. Fromstein also believed that a District Court felony conviction would have more impact and more deterrent effect than would a court-martial conviction. As he testified, "[W]e had the perception, which may be correct or incorrect, that a conviction in federal criminal court is more significant than action that the Army can take."[6]

We are inclined to agree with the court below that Mr. Fromstein's reasons for requesting delay of this court-martial were unpersuasive.[7] Moreover, to split the charges for trial between the Federal District Court and a military tribunal—both created by the same sovereign—provided a fertile field for claims of double jeopardy and collateral estoppel and contravened the usual policy of consolidating multiple charges for a single trial.

In our view, however, it is even more troublesome that Duncan and his counsel were never apprised of what was occurring and why the lengthy delay in the military proceedings was taking place. In that event, Duncan could have demanded a prompt military trial and contested the reasons for delay.

■ The Government asserts that the delay to await the outcome of the District Court proceeding was "for good cause" within the meaning of RCM 707—which excludes certain delays. Although we have many doubts about this proposition as applied to the circumstances here, we realize

---

4. At the time of appellant's court-martial, RCM 707(c)(8), Manual, supra, excluded from government accountability: "Any ... period of delay for good cause, including unusual operational requirements and military exigencies." Effective after appellant's court-martial, RCM 707(c)(8) was redesignated RCM 707(c)(9) by Executive Order No. 12,586, 52 Fed.Reg. 7103, 7105, 7112 (March 3, 1987).

5. The DoJ prosecutors may have been unaware that the safeguards against "greymail" in the Classified Information Procedures Act, 18 USC App. §§ 1–16 (1980), have their counterpart in Mil.R.Evid. 505, Manual, supra.

6. In our view, Mr. Fromstein attributed far too little effect to a conviction by court-martial. For example, Mr. Fromstein seemed to believe that a court-martial conviction would not affect Duncan's law license in the same way as would a conviction in a Federal District Court; but it has been our observation that state bars do attach considerable weight to a court-martial conviction.

7. In this connection, we note that the Court of Military Review is vested with broad factfinding power and plenary de novo power of review on questions of law. Art. 66(c), Uniform Code of Military Justice, 10 USC § 866(c); see United States v. Cole, 31 MJ 270 (CMA 1990).

that often it will be desirable to defer proceedings in one court while related proceedings are completed in another court. *cf. Woodrick v. Divich,* 24 MJ 147 (CMA 1987). We are convinced, however, that—absent extraordinary circumstances not present here—a delay for this reason is excludible on grounds of "good cause" only when the accused is informed at the time of the purported reason and given some opportunity to contest the decision.

Shortly before oral argument, the Government called to our attention the case of *United States v. Lattany,* 982 F.2d 866 (3d Cir. 1992), where the district judge had given an open-ended continuance for the ends of justice and later made specific findings as to the circumstances which justified the delay. *Lattany,* however, is quite distinguishable from the present case; and, indeed, it supports the result reached by the Court of Military Review. There the Court of Appeals made clear that, although the making of specific findings could be delayed, the Government was not allowed to delay trial and then, at a later time, request the judge to find that "good cause" existed for the delay that had already occurred. Indeed, in *Lattany,* the court stated:

> Moreover, a district court cannot provide an after-the-fact justification for unauthorized delays by granting an ends-of-justice continuance *nunc pro tunc. See United States v. Carrasquillo,* 667 F.2d 382, 386 (3d Cir. 1981).

982 F.2d at 877.

In short, as we interpret *Lattany,* the court must rule, with notice to the defense, that a delay is necessary; but the judge, if he decides that a delay, whether for a specific time or open-ended, is justified, may specify at a later time the circumstances that constitute the justification.

█ If the Government had offered Duncan and his counsel an opportunity to show why trial on the original charges or the first set of additional charges should not be delayed, he could have contested the existence of "good cause" and demanded prompt trial. In that event, he would have had the opportunity—at that time, rather than many months later—to contend that delay in order to await a possible District Court conviction was not "good cause." In turn, the correctness of that determination could be considered later upon review with the aid of appropriate findings made at the trial level. Because no such opportunity was presented and the original charges and first set of additional charges were left in suspense for more than a year, RCM 707 was violated, as the court below properly determined.[8] Therefore, dismissal of those charges is necessary.

## III

The certified issue is answered in the negative.

The decision of the United States Army Court of Military Review dismissing the charges is affirmed.

Chief Judge SULLIVAN and Judge WISS concur.

Judge CRAWFORD did not participate.

GIERKE, Judge, with whom Judge COX joins (concurring in part and in the result):

I would affirm the decision of the Court of Military Review for the reasons recited in their opinion. 34 MJ 1232 (1992). I part company with Senior Judge Everett's majority opinion insofar as it implies that notice to the defense and an opportunity to demand immediate trial are part of the determination whether the Government has demonstrated good cause for delaying a trial.

In *United States v. McCallister,* 27 MJ 138 (CMA 1988), this Court abolished the demand prong of *United States v. Burton,* 21 USCMA 112, 44 CMR 166 (1971); and in *United States v. Kossman,* 38 MJ 258 (CMA 1993), we abandoned the *Burton* 90-day presumption. Accordingly, notice to

---

8. We do not apply retroactively to this case the rule we announced in *United States v. Carlisle,* 25 MJ 426 (CMA 1988), which requires that a delay be approved in writing or on the record. However, this case demonstrates the wisdom of that rule.

the defense and an opportunity to demand immediate trial are not relevant to the certified issue. The only question is whether the Court of Military Review erred by substituting its judgment for the military judge's on the speedy-trial issue. While our Court is limited to questions of law, Art. 67(c), Uniform Code of Military Justice, 10 USC § 867(c)(1989), the Court of Military Review is vested with broad fact-finding power and plenary *de novo* power of review on questions of law. Art. 66(c), UCMJ, 10 USC § 866(c); *see United States v. Cole*, 31 MJ 270 (CMA 1990).

I am satisfied that the decision is factually supportable on the basis of the evidence of record, based on correct legal principles, and within the court's authority. Accordingly, I concur in affirming the decision of the court below dismissing the charges.