**UNITED STATES of America, Appellant,**

**v.**

**Peter D. VAN OOSTERHOUT, Appellee.**

**No. 95–5413.**

United States Court of Appeals,
District of Columbia Circuit.

Argued Sept. 10, 1996.

Decided Oct. 8, 1996.

Jeffrey Clair, United States Department of Justice, argued the cause for appellant, with whom Frank W. Hunger, Assistant Attorney General, Eric H. Holder, Jr., United States Attorney, and Barbara C. Biddle, Assistant Director, United States Department of Justice, were on the briefs.

Phillip S. Kushner argued the cause for appellee, with whom Gerald A. Messerman, Cleveland, OH, was on the brief.

Before: WALD, SILBERMAN, and SENTELLE, Circuit Judges.

Opinion for the Court filed by Circuit Judge SILBERMAN.

SILBERMAN, Circuit Judge:

The government filed this action under the False Claims Act to recover monies paid out under Small Business Administration (SBA) loan guaranties when River Capital Corporation, a small business investment company financed by SBA-guaranteed debentures, defaulted on its obligations. Van Oosterhout, who was President and Director of River Capital, is alleged to have been personally responsible for the submission to the SBA of financial statements that falsely stated River Capital's financial position in order to obtain SBA-guaranteed financing. The district court granted summary judgment in favor of Van Oosterhout on the ground that the False Claims Act counts are barred by the Act's six-year statute of limitations, *United States v. Vanoosterhout,* 898 F.Supp. 25, 27–29 (D.D.C.1995), and the government appealed.[1] We affirm.

---

1. The district court also granted summary judgment in favor of Van Oosterhout on a separate False Claims Act count and three counts brought under the Financial Institutions Reform, Recovery and Enforcement Act of 1989, 12 U.S.C. § 1833a (1994), *see Vanoosterhout,* 898

## I.

River Capital was established under the Small Business Investment Act of 1958, 15 U.S.C. §§ 681–687m (1988), as a Small Business Investment Corporation (SBIC). From 1983 to 1987, the SBA provided financing to River Capital by guaranteeing forty-three subordinated debentures issued by River Capital. As part of the guarantee program, River Capital was under an ongoing obligation to file annual reports with the SBA disclosing its financial condition, *see* 13 C.F.R. § 107.1002(e) (1988), and to file new applications any time additional financing was desired, *see* 13 C.F.R. § 107.201 (1988). The counts at issue on appeal are premised on River Capital's August 3, 1987 application to the SBA for additional financing. On River Capital's behalf, Van Oosterhout allegedly made false statements certifying the continuing correctness of an earlier annual report and its full compliance with program requirements. The SBA subsequently guaranteed $2.5 million of River Capital debentures on September 29, 1987.

On July 1 and August 1, 1988, River Capital defaulted on interest payments due on outstanding debentures. Under SBA regulations, the SBA had discretion to either accelerate River Capital's indebtedness or forebear acceleration and seek to work out a cure for the default. If the SBA decided to accelerate, its procedures called for it to transfer River Capital from "operating status into liquidation status in order to protect the creditor position of SBA." The SBA ultimately decided to accelerate, and on August 24, 1988, transferred River Capital to "liquidation status."

On August 30, 1988, the SBA notified Chemical Bank—the party that, as trustee for the financing, held legal title to the debentures—of the transfer of River Capital to liquidation status. The SBA then sent an acceleration letter to River Capital on September 1, 1988, notifying River Capital of its transfer to liquidation status, declaring all of its indebtedness immediately due and payable, and demanding payment in full. On

September 9, 1988, without demand or application, the SBA made a guarantee payment to Chemical Bank.

After pursuing various criminal charges against Van Oosterhout, the government filed this civil suit on September 1, 1994, alleging, *inter alia,* that Van Oosterhout had violated the False Claims Act, 31 U.S.C. §§ 3729–3733 (1994), when he "knowingly present[ed], or cause[ed] to be presented, to an officer or employee of the United States Government ... a false or fraudulent claim for payment or approval," *id.* § 3729(a)(1), and "conspire[d] to defraud the Government by getting a false or fraudulent claim allowed or paid," *id.* § 3729(a)(3). Treating Van Oosterhout's motion to dismiss as a motion for summary judgment, the district court held that River Capital's August 3, 1987, allegedly false application for additional financing ripened into a "false or fraudulent claim" actionable under the statute when, on August 24, 1988, the SBA transferred River Capital to liquidation status. As this suit was filed more than six years after the transfer, the district court held the suit barred by the False Claims Act's six-year statute of limitations. *Vanoosterhout,* 898 F.Supp. at 29.

## II.

■ A civil action to recover damages under the False Claims Act may not be brought:

(1) more than 6 years after the date on which the violation of section 3729 is committed, or

(2) more than 3 years after the date when facts material to the right of action are known or reasonably should have been known by the official of the United States charged with responsibility to act in the circumstances, but in no event more than 10 years after the date on which the violation is committed, whichever occurs last.

31 U.S.C. § 3731(b). As it is the six-year statute that applies to this case, the key question is when Van Oosterhout is alleged to have committed a "violation of section

F.Supp. at 29–30, but the government has not appealed those portions of the district court's decision.

3729" by presenting an allegedly false claim to the SBA.

It might be thought that appellant never actually made a "claim" against the government at all. In *United States v. McNinch,* 356 U.S. 595, 78 S.Ct. 950, 2 L.Ed.2d 1001 (1958), the leading Supreme Court case on the issue, the Court held that an application for credit insurance from a federal agency was not a "claim" within the meaning of the False Claims Act. The Court reasoned that " 'the conception of a claim against the government normally connotes a demand for money or for some transfer of public property' "; in agreeing to insure a home improvement loan, however, the government had "disburse[d] no funds nor [had] it otherwise suffer[ed] immediate financial detriment." *Id.* at 599, 78 S.Ct. at 952 (quoting *United States v. Tieger,* 234 F.2d 589, 591 (3d Cir. 1956)). As the debtor had not defaulted on the loan, the Court left open the question of whether "a lending institution's demand for reimbursement on a defaulted loan originally procured by a fraudulent application would be a 'claim.' " *Id.* at 599 n. 6, 78 S.Ct. at 952 n. 6. Importantly, the Court implicitly recognized that an actual payment (with or without a demand for payment) or an "immediate financial detriment" would be equivalent to a claim under this statute.

■ Subsequently, every court to have considered the question left open by *McNinch* has concluded that the actions of the innocent third-party lender can effectuate the "claim" against the government. It is generally accepted that the false application for a guaranteed loan by the debtor establishes only an "inchoate" violation of the Act that does not ripen into a claim actionable under the statute until a later event of legal consequence between the lender and the government. *See, e.g., United States v. Ekelman & Assoc., Inc.,* 532 F.2d 545, 552 (6th Cir.1976) (false application ripened into claim when lender sought guarantee payment from government); *United States v. Ettrick Wood Products, Inc.,* 683 F.Supp. 1262, 1263–64 (W.D.Wisc.1988) (false application ripened into claim either on date lender's demand for payment was made on government or date on which funds were disbursed).

■ As we noted, an actual payment to the lender qualifies as the event that effectuates the "claim" for the government has "disburse[d] ... funds," *McNinch,* 356 U.S. at 599, 78 S.Ct. at 952–53, but is it necessary, short of that, for the lender to make a demand? Both parties seem to agree, as do we, that a third-party lender's demand is not indispensable, unless, of course, it is a precondition to liability. *See Ekelman & Assoc.,* 532 F.2d at 552. The government concedes that the moment it becomes liable to the lender—in *McNinch*'s terms, an "immediate financial detriment," 356 U.S. at 599, 78 S.Ct. at 952—the claim has ripened. The dispute here concerns the point at which that occurred. The government argues that it did not become legally obligated to pay Chemical Bank in behalf of the bondholders until it accelerated River Capital's debt, which it could do only after sending River Capital notice of its liquidation on September 1, 1988. It relies on SBA regulations that provided that after a debtor defaulted on its interest payments, the SBA could only accelerate the entire indebtedness by giving the debtor written notice. 13 C.F.R. § 107.203(b)(1) (1988).

We disagree. The government is focusing on its remedies vis-a-vis the debtor—which are set forth in its regulations—not, as is relevant in this context, on its legal obligations to the lender. It is SBA's offering circular which preceded the issuance of the bonds, and not the regulations, that tells us quite clearly when SBA became liable to Chemical. The offering circular draws a distinction between an acceleration and an "Acceleration Event," stating that:

> Upon the occurrence of an Acceleration Event, SBA will pay to the Trustee 100% of the principal amount of such Debenture together with interest accrued to the applicable Payment Date (an "Acceleration Payment").[2]

**2.** A section of the offering circular entitled "Description of Debentures" similarly indicates that:

A Guarantee Payment, as defined herein, will occur only following an SBA administrative

An "Acceleration *Event*" is in turn defined as occurring "upon an event of a default and transfer of the SBIC into liquidation status by SBA." The government's argument that it could delay its liability to Chemical by holding off—perhaps indefinitely—on giving a liquidation notice to the debtor not only runs squarely against the plain language of the offering circular, it makes little sense. Under the offering circular, the bondholders would expect their guarantees to be honored once the debtor defaulted and SBA recognized, by transferring the account to liquidation status, that it was dealing with a very troubled loan. They would be indifferent to SBA's subsequent efforts to recover as much as it could through the actual liquidation, which would require acceleration of the loan.

Accordingly, here the "Acceleration Event" occurred when the SBA, after River Capital had twice defaulted, transferred River Capital to liquidation status on August 24, 1988; as a result, the government became legally obligated to make what the offering circular calls an "Acceleration Payment" to Chemical Bank on that date. River Capital's allegedly false August 3, 1987 application thus ripened into a "false claim"—the alleged violation of the statute—on August 24, 1988. As this suit was filed "more than six years after the date on which the violation of § 3729 [was] committed," 31 U.S.C. § 3731(b)(1), it is barred by the False Claims Act's statute of limitations.[3]

The judgment of the district court is

*Affirmed.*

---

action to transfer the applicable SBIC from operating status into liquidation status (an "Acceleration Event").

3. The parties discuss at length *United States v. Rivera*, 55 F.3d 703 (1st Cir.1995), but that case

dealt with an issue not really presented here: whether a violation occurred when a lender made a demand but actual liability did not attach until a condition subsequent. *See id.* at 710.