UNITED STATES of America, ex rel. Anne F. LANDERS, Plaintiff,

v.

BAPTIST MEMORIAL HEALTH CARE CORP., et al., Defendants.

No. 2:99–cv–2097.

United States District Court, W.D. Tennessee, Western Division.

Dec. 17, 2007.

Joe A. Dycus, Veronica F. Coleman, U.S. Attorney's Office, Daniel K. Evans, Mary L. Wolff, Patrick M. Ardis, Wolff Ardis, Memphis, TN, Clinton C. Carter, John E. Tomlinson, Beasley Allen Crow Methvin Portis & Miles PC, Montgomery, AL, for Plaintiff.

George T. Wheeler, Jr., James D. Wilson, Michelle Hohnke Joss, Harris Shelton Dunlap Cobb & Ryder, Memphis, TN, John T. Boese, Fried Frank Harris Shriver & Jacobson, Washington, DC, for Defendants.

## ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

BERNICE BOUIE DONALD, District Judge.

Before the Court is Defendants Baptist Memorial Health Care Corporation's, Baptist Memorial Health Care Systems, Inc.'s, and Baptist Memorial Hospital, Inc.'s, d/b/a Baptist Memorial Medical Center, Motion for Summary Judgment pursuant to Fed.R.Civ.P. 56(c) (D.E.# 137). On November 4, 2002, Plaintiff Anne F. Landers filed an Amended Complaint under the False Claims Act (FCA), 31 U.S.C. §§ 3729, *et seq.*, alleging Defendants knowingly presented false and fraudulent claims to the United States Department of Health and Human Services and other governmental agencies for reimbursement for services and resources provided to patients insured under the Medicare program and other federally funded programs. Defendants contend that there is no genuine issue of material fact and they are entitled to judgment as a matter of law. For the following reasons, the Court **GRANTS** Defendants' Motion for Summary Judgment.

## I. BACKGROUND[1]

Plaintiff is a registered nurse (RN) who was employed as the Associate Chief Nursing Officer at Baptist Memorial Hospital/Medical Center (Baptist Medical Center) from May 1997 to February 1998. Defs.' Statement of Undisputed Material Facts in Support of Defs.' Mot. for Summ. J. Under Rule 56 ¶ 1 (hereinafter Undisputed Facts). Baptist Memorial Health Care Corporation is a Tennessee non-profit corporation that is the sole member of Baptist Medical Center. *Id.* ¶ 2. Baptist Memorial Health Care System, Inc., is also a Tennessee non-profit corporation. *Id.* Formerly, Baptist Memorial Health Care System, Inc. was the sole member of the hospital corporations in the Baptist system, but currently exists only as an advisory entity. *Id.* Baptist Medical Center was located on Madison Avenue in Memphis,

1. For the purposes of this motion, the Court accepts these facts as true.

Tennessee before it ceased operations on November 17, 2000. *Id.* ¶ 3.

Plaintiff asserts that since at least 1984, Defendants have participated in Medicare and other federally-funded programs, and have sought reimbursement from the Government pursuant to these programs for services provided to program beneficiaries. Pl's. Am. Compl. ¶ 9. In 1994 or 1995, Baptist Medical Center underwent a major restructuring that resulted in severe staffing shortages. *Id.* ¶ 18. Specifically, Defendants increased the nurse/patient ratio to 1:3 in the Intensive Care Unit (ICU), used surgical technicians (scrub techs) as nurse circulators in the Operating Room (OR),[2] failed to meet the applicable standard of care for sterilization of instruments and/or cleanliness, and failed to meet other applicable standards of care for surgical procedures. *Id.* ¶¶ 19–28.

In January 1998, Plaintiff and her supervisor, Nancy Nowak (Nowak), Vice President and Chief Nursing Officer, conducted a series of meetings with representatives of Defendants' specialty groups in order to discuss various problems Baptist Medical Center was experiencing with patient care and nursing. *Id.* ¶ 29. After learning of significant problems and concerns from medical staff during these meetings, Plaintiff and Nowak met with David Hogan (Hogan), Chief Operating Officer of Baptist Memorial Health Care Systems, and Jerry Brantley (Brantley), CEO of Baptist Medical Center. *Id.* ¶¶ 30–31. During the meeting with Hogan and Brantley, Hogan asked Plaintiff to spend three weeks evaluating the alleged issues raised by the med-

ical staff. *Id.* ¶ 31. During the course of her evaluation, Plaintiff learned that scrub techs were acting as circulators in surgery without an available RN. *Id.* ¶ 32. As discussed above, because using scrub techs as circulators violated the applicable standard of care, Plaintiff reported this practice to Nowak. *Id.* ¶ 36. Plaintiff also reported her concerns to Marilyn Dunavant, Defendants' compliance officer, who expressed the opinion that the practice was illegal. *Id.* ¶ 37. Shortly thereafter, Plaintiff related or reiterated her concerns to a series of individuals including Hogan, Dunavant, Linda Duncan (Duncan), Acting Nursing Director of Surgery, and Karen Farley (Farley), Risk Manager for the OR. *Id.* ¶¶ 38–39. Plaintiff advised that it would be necessary to cancel surgeries in order meet the applicable standard of care. *Id.* ¶ 39. Although Dunavant and Duncan agreed that Baptist Medical Center needed to use RN's as circulators in all surgeries, Dunavant cautioned Plaintiff not to discuss the matter with anyone. *Id.*

Despite Dunavant's instructions, Plaintiff discussed the issue with nurse managers who confirmed Plaintiff's belief that the problem could be remedied only by canceling surgeries or hiring additional personnel. *Id.* ¶ 40. After Plaintiff advised Nowak that it was not possible to properly staff the OR without canceling surgeries, Nowak refused to authorize cancellations. *Id.* ¶ 41. For approximately the next month, Plaintiff continued to gather information regarding care and safety issues that arose from inadequate staffing.[3] *Id.* ¶ 42. She also learned of

**2.** A circulator is responsible for the ongoing clinical assessment of a patient during surgery. *Id.* ¶ 33. A scrub tech hands the surgeon instruments during surgery. *Id.* ¶ 34. Under the applicable standard of care promulgated by the Association of Operating Room Nurses (AORN), circulators are re-

quired to be RN's and scrub techs are generally not RN's. *Id.* ¶¶ 21, 35.

**3.** In addition to those issues previously discussed, Plaintiff learned that Baptist Medical Center's allegedly substandard practices included having: one RN manage multiple OR's simultaneously while also acting as the

specific instances of alleged fraud and/or abuse.[4] *Id.* ¶¶ 50–56. In February 1998, Plaintiff submitted to her supervisors an unsolicited written report outlining her concerns. *Id.* ¶ 48. On February 24, 1998, Defendants terminated Plaintiff. *Id.* ¶ 49.

Plaintiff filed her original Complaint under seal on February 1, 1999. On June 26, 2002, the Government filed its Notice of Election to Decline Intervention. As a result, on June 27, 2002, the Court entered an order unsealing the Complaint and allowing Plaintiff to serve the Complaint upon Defendants. Plaintiff subsequently filed an Amended Complaint on November 4, 2002. Defendants filed their Motion to Dismiss on November 15, 2002. On January 17, 2003, the Court denied their Motion to Dismiss. Defendants filed their present Motion for Summary Judgment on October 1, 2007. Thereafter, Plaintiff filed her Response on October 31, 2007. Defendants then filed their Reply on December 6, 2007.

In her Amended Complaint, Plaintiff asserts that Defendants falsely certified compliance with applicable statutes, regulations, and rules in order to obtain payment or approval from the Government of their Medicare claims. *Id.* ¶¶ 57–61. In their present motion, Defendants contend that contrary Plaintiff's arguments, the Sixth Circuit does not condition payment on compliance with the authorities cited by Plaintiff, the certifications of compliance were not material to the Government's payment decision, and that Defendants'

claims were not false or fraudulent as a matter of law. Defs.' Mem. of Law in Support of Defs.' Mot. for Summ. J. Under Rule 56 at 3 (hereinafter Defs.' Mem.).

## II.  LEGAL STANDARD

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Although hearsay evidence may not be considered on a motion for summary judgment, *Jacklyn v. Schering–Plough Healthcare Prods. Sales Corp.,* 176 F.3d 921, 927 (6th Cir.1999), evidentiary materials presented to avoid summary judgment otherwise need not be in a form that would be admissible at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Thaddeus–X v. Blatter,* 175 F.3d 378, 400 (6th Cir.1999). The evidence and justifiable inferences based on facts must be viewed in a light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Wade v. Knoxville Utilities Bd.,* 259 F.3d 452, 460 (6th Cir.2001).

Summary judgment is proper "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex,* 477 U.S. at 322,

---

charge nurse, dangerously low staffing levels in various departments, and no full-time RN for triaging emergency department patients. *Id.* ¶¶ 42–46. A charge nurse is responsible for organizing all surgeries during his or her shift. *Id.* ¶ 45.

4. These instances included: the use of non-sterile instruments during surgery, a patient

who "coded" while an RN was attending to other patients, the fact that Baptist Medical Center did not upgrade monitors that may have alleviated some issues, and a patient who became brain-dead because she was not placed on a certain monitor because nurses were attending to other patients. *Id.* ¶¶ 50–54.

106 S.Ct. 2548. The moving party can prove the absence of a genuine issue of material fact by showing that there is a lack of evidence to support the nonmoving party's case. *Id.* at 325, 106 S.Ct. 2548. This may be accomplished by submitting affirmative evidence negating an essential element of the nonmoving party's claim, or by attacking the nonmoving party's evidence to show why it does not support a judgment for the nonmoving party. 10a Charles A. Wright, Arthur R. Miller and Mary Kay Kane, *Federal Practice and Procedure* § 2727 (2d ed.1998).

Once a properly supported motion for summary judgment has been made, the "adverse party may not rest upon the mere allegations or denials of [its] pleading, but ... must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). A genuine issue for trial exists if the evidence would permit a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). To avoid summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

## III. ANALYSIS

■ "The purpose of the False Claims Act is 'to provide for restitution to the government for money taken from it by fraud.' " *U.S. ex rel. Augustine v. Century Health Servs.*, 289 F.3d 409, 413 (6th Cir. 2002) (quoting *U.S. ex rel. Marcus v. Hess*, 317 U.S. 537, 551, 63 S.Ct. 379, 87 L.Ed. 443 (1943)). However, the FCA "was not designed to reach every kind of fraud

practiced on the Government." *U.S. v. McNinch*, 356 U.S. 595, 599, 78 S.Ct. 950, 2 L.Ed.2d 1001 (1958). The FCA provides for qui tam actions in which a private individual may bring a suit on behalf of himself or herself as well as the Government. 31 U.S.C. § 3730(b)(1). Under the FCA:

> "[a]ny person who—(1) knowingly presents, or causes to be presented, to an officer or employee of the United States Government ... a false or fraudulent claim for payment or approval; (2) knowingly makes, uses, or causes to be made or used a false record or statement to get a false or fraudulent claim paid or approved by the Government ... is liable to the United States Government for a civil penalty...."

31 U.S.C. § 3729(a). In addition to the statutory elements, some circuits, including the Sixth Circuit, impose a requirement that the false or fraudulent claim be material.[5] *U.S. ex rel. A + Homecare, Inc. v. Medshares Mgmt. Group, Inc.*, 400 F.3d 428, 442 (6th Cir.2005).

## A. FALSE CERTIFICATION

The parties dispute whether Defendants' Medicare claims qualify as false or fraudulent claims under the FCA. Plaintiff alleges that Defendants knowingly submitted false and fraudulent claims by certifying to the Government that its services conform with applicable Medicare laws. Pl's. Resp. in Opp'n. to Defs.' Mot. for Summ. J. at 5 (hereinafter Pl's. Resp.). Specifically, Defendants allegedly certified they complied with Medicare's Conditions of Participation, 42 C.F.R. §§ 482 *et seq.*, by: (1) agreeing in their Health Insurance Benefit Agreement, Form HCFA–1561, to conform to the provisions of Section 1866 of the Social Security Act and regulations pro-

---

5. Some courts also require the additional element of damages. *U.S. ex rel. Harrison v.*

*Westinghouse Savannah River Co.,* 176 F.3d 776, 785 n. 7 (4th Cir.1999).

mulgated thereunder, (2) certifying in their Health Care Provider/Supplier Enrollment Applications, Form HCFA–855, that they were familiar with and agree to abide by applicable Medicare laws and regulations, and (3) certifying in their Cost Reports, Form HCFA–2552, that they were "familiar with the laws and regulations regarding the provision of health care services and that the services identified in this cost report were provided in compliance with such laws and regulations." *Id.* at 12; Pl's. Am. Compl. ¶¶ 11–13, 15. However, Plaintiff asserts that Defendants, despite their certifications to the contrary, failed to satisfy the following Conditions of Participation: (1) having an adequate number of nurses and other personnel to provide nursing care, 42 C.F.R. § 482.23(b)(2007), (2) organizing surgical services appropriate to the scope of the services offered, *Id.* § 482.51(a), (3) having "[p]olicies governing surgical care ... designed to assure the achievement and maintenance of high standards of medical practice and patient care," *Id.* § 482.51(b), and (4) providing a sanitary environment, *Id.* § 482.42. Pl's. Resp. at 13.

■ Under the false certification theory, a defendant may be held liable under the FCA if "a party certifies compliance with a statute or regulation as a condition to governmental payment." *U.S. ex rel. Mikes v. Straus,* 274 F.3d 687, 697 (2d Cir.2001). As a result, the FCA, "does not encompass those instances of regulatory noncompliance that are irrelevant to the government's disbursement decisions." *Id.* Plaintiff contends that Defendants' claims were based upon both express false certifications and implied false certifications. "An expressly false claim is ... a claim that falsely certifies compliance with a particular statute, regulation, or contractual term, where compliance is a prerequisite to payment." *Id.* at 698. In contrast,

"[a]n implied false certification claim is based on the notion that the act of submitting a claim for reimbursement itself implies compliance with governing federal rules that are a precondition to payment." *Id.* at 699; *see also U.S. ex rel. Augustine,* 289 F.3d at 415 (liability under the FCA "can attach if the claimant violates its continuing duty to comply with the regulations on which payment is conditioned.").

■ Plaintiff has failed to demonstrate that Defendants' alleged non-compliance with Medicare's Conditions of Participation imposes liability under either an express or an implied false certification theory. The HCFA forms in which Defendants agreed to abide by applicable Medicare laws and regulations do not expressly or impliedly condition payment upon compliance. Conditions of Participation are not the equivalent of Conditions of Payment, which are codified in a separate section, 42 C.F.R. Part 424. The regulations define Conditions of Participation as "the requirements providers ... must meet to participate in the Medicare program...." 42 C.F.R. § 488.1 (2007). Thus, Conditions of Participation are quality of care standards directed towards an entity's continued ability to participate in the Medicare program rather than a prerequisite to a particular payment. Further, several courts have declined to impose liability under the FCA when alleged false certifications of compliance were not conditions of payment. *See, e.g., U.S. ex rel. Gross v. AIDS Research Alliance–Chicago,* 415 F.3d 601, 604 (7th Cir.2005) ("An FCA claim premised upon an alleged false certification of compliance ... also requires that the certification of compliance be a condition of or prerequisite to government payment."); *U.S. ex rel. Willard v. Humana Health Plan of Tex. Inc.,* 336 F.3d 375, 381–83 (5th Cir. 2003); *U.S. ex rel. Siewick v. Jamieson Science & Eng'g,* 214 F.3d 1372, 1376

(D.C.Cir.2000); *U.S. ex rel. Mikes,* 274 F.3d at 702 (payment not expressly conditioned on compliance with conditions of participation set forth in 42 U.S.C. § 1320c–5(a)).

Although Defendants' alleged non-compliance with Conditions of Participation may lead to prospective corrective action or even termination, Plaintiff has not presented any evidence that Defendants would have been ineligible to receive payment of its Medicare claims during a potential period of non-compliance. *See* 42 C.F.R. §§ 488.28, 489.53 (2007). In contrast, Defendants have presented ample evidence that even assuming they failed to comply with Conditions of Participation and/or other applicable standards of care, the Government would nevertheless have continued to reimburse their claims at least for a period of time. *See* Defs.' Mem. at 7–13; 42 C.F.R. § 489.55 (2007) (payment available for certain services up to 30 days after termination). Thus, Plaintiff has not presented specific facts showing that there is a genuine issue for trial.

## B. MATERIALITY

■■■ Even assuming Plaintiff has presented sufficient evidence to satisfy the statutory elements of the FCA, Plaintiff has failed to demonstrate that Defendants' alleged false claims were material to the Government's decision to make payments. Although materiality is related to the certification theory of liability, "[a] materiality requirement holds that only a subset of admittedly false claims is subject to the False Claims Act liability." *U.S. ex rel. Mikes,* 274 F.3d at 697. Hence, "liability does not arise merely because a false statement is included within a claim, but rather the claim itself must be false or fraudulent. A false statement within a claim can only serve to make the entire claim itself fraudulent if that statement is

material to the request or demand for money or property." *U.S. ex rel. A+ Homecare, Inc.,* 400 F.3d at 443. "Materiality is a mixed question of law and fact." *U.S. ex rel. Harrison,* 176 F.3d at 785. The Sixth Circuit has adopted the "natural tendency" test as the standard by which courts should evaluate materiality in the FCA context. *U.S. ex rel. A+ Homecare, Inc.,* 400 F.3d at 445. Under the natural tendency test, "a false statement is material if it has a natural tendency to influence, or [is] capable of influencing the decision of the decision making body...." *Id.* (quoting *Neder v. U.S.,* 527 U.S. 1, 16, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999)). "This standard 'focuses on the potential effect of the false statement when it is made, not on the actual effect of the false statement when it is discovered.' " *Id.* (quoting *U.S. ex rel. Harrison,* 352 F.3d at 916–17).

In this case, Plaintiff has failed to satisfy the Sixth Circuit's materiality requirement for liability under the FCA. As discussed above, Conditions of Participation do not condition payment on certifications of compliance. Therefore, any alleged false certifications of compliance would not have a natural tendency to influence the Government's payment decisions.

## C. WORTHLESS SERVICES CLAIM

■■■ In her response, Plaintiff alleges that caring for patients in a manner that does not conform to applicable standards of care amounts to billing the Government for care not actually performed. Pl's. Resp. at 19. Plaintiff's worthless services claim "is a distinct claim under the [FCA]." *U.S. ex rel. Mikes,* 274 F.3d at 703. "[A] worthless services claim asserts that the knowing request of federal reimbursement for a procedure with no medical value violates the [FCA] irrespective of any certification." *Id.* at 702; *see also U.S. ex rel. Lee v. SmithKline·Beecham,*

*Inc.*, 245 F.3d 1048, 1053 (9th Cir.2001). In this case, Plaintiff has failed to present sufficient evidence that Defendants' alleged violations of applicable standards of care were "so deficient that for all practical purposes it is the equivalent of no performance at all." *U.S. ex rel. Mikes*, 274 F.3d at 703. Even assuming Plaintiff has demonstrated that Defendants failed to conform with Medicare's Conditions of Participation or other applicable standards of care, this alone is not enough to create a genuine issue of material fact as to a worthless services claim. *See id.*

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants' Motion for Summary Judgment. Because the Court's Order is premised on the foregoing reasoning, it declines to address the other issues raised in the parties' briefs.

**IT IS SO ORDERED.**